HENRY LEE RUDOLPH
714 W. 9th Street
Cheyenne, Wyoming 82001

2:14cv883-CW

FILED
U.S. DISTRICT COURT

2015 SEP 28 ☐ 1:17
DISTRICT OF UTAH

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT BY OF UTAH-Central Div.
DEPUTY CLERK

HENRY LEE RUDOLPH
          Plaintiff

V.

TIMOTHY R. HANSON
KAREN STAM
CHARLES BEHRENS
BARBRA BYRNS
ALEX HUGGARD
KATHERINE BERNARDS GOODMAN
ERIN RILEY
MICHAEL SIBBETT
KEITH HAMILTON
JESSE GALLEGOS
CURTIS GARNER
JEREMY HOLT
PAT BRIAN (Deceased)
(assorted Jane and John Does) et.al

AMENDED COMPLAINT
42 U.S.C. §1983 (inter alia)

## JURISDICTION

Jurisdiction is proper in this court according to:
42 U.S.C. §1981, 1983, 1985
18 U.S.C. §4, §1001, §1501, §1503, §1621, §1623, §

§2071 and 2672 et. seq.

Comes now, Henry Lee Rudolph a citizen of Wyoming (formerly Utah) whose current mailing address is 714 W. 9th Street Cheyenne Wyoming (82001). This complaint is in accordance with current federal Constitutional law and the "then-existing" landscape, i.e. pre AEDPA. Legal arguments made by Erin Riley (an assistant attorney general under Mark Shurtleff) caused The U.S. District Court to utilize the wrong standard of review via clearly erroneous facts, and an erroneous view of the law with no valid assessment of the evidence. Evidence which has been ignored and hidden until the Utah Board of Pardons terminated this conviction/sentence Dec 1, 2014; At the first and only evidentiary hearing in over 20 years. The Utah Board of Pardons did what the Courts refused to do - they invalidated a wrongful Un-Constitutional conviction and sentence which was a 5-life sentence that was supposed to end in 2096 - certainly I would be dead by then. See exhibit 1.

The AEDPA's statutory amendments only apply to habeas petitions filed after AEDPA's April 24, 1996 enactment. Lindh v. Murphy, 521 U.S. 320, 328 (1997). Mr. Rudolph's notice of appeal was filed pre-AEDPA. The Utah Supreme Court reversed in 1995 because "significant portions of the transcript (only the defensive presentation and Mr. Rudolph's testimony) was alleged to have to have been "lost due to a computer malfunction with the Court reporter's computer."

In 1998, the Utah Supreme Court stated "we did not review the sufficiency of the evidence because incomplete transcripts precluded review" (as per Jackson v. Va., 443 U.S. 367 (1979). The wrong law has been used. See Agostini v. Felton, 521 U.S. 2d 117 S.Ct. 1997 (1997).

2

In 2002, the Utah Supreme Court stated the transcripts were now "destroyed". However, the included docket shows Joan C. Watt's motion to supplement the record was granted. The record was supplemented and never reviewed. The Board of Pardons gave a cursory limited review and immediately invalidated the sentence and conviction Dec 1, 2014. See exhibits 2, 3, 4, 5 and 6. (i.e. factual averments and proof of my assertions). The state generated these documents!

A district court by definition abuses its discretion when it makes an "error of law". The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions. Koon v. U.S., 518 U.S. 81, 99-100 (3 citations to Cooter & Gell omitted); See Cooter & Gell v. Hartmarx, 496 U.S. 235, 257 (1981). A court "necessarily abuses its discretion if it based its ruling on an erroneous view of the law" and as here a clearly erroneous fact. Id. See U.S. Dist. Ct. docket entry #77. See Exhibit 1 p. 6-7 f.n. 3.

The Court has a general "duty to apply the correct law." Empire Life Insurance Co. v. Valdak, 468 F.2d 330, 334 (5th Cir. 1972). See entry #66. Id.

In Bell v. Thompson, Justices Stevens, Souter, Ginsberg and Breyer in dissent argued that a court of appeals, as with any court has "not only the right, but the obligation to correct its own mistakes." Bell v. Thompson, 545 U.S. 794 at 814-15. This complaint challenges the integrity of the federal habeas corpus proceedings. This proves misrepresentation and misconduct by the adverse party (60(b)(3) FRCP) in a valid chain conspiracy to hide what actually occurred below via malice, fraud deceit, collusion, obfuscation and intentional discrimination.

## JUDICIAL IMMUNITY

Timothy Hanson was formerly a judge in the third judicial district court of Salt Lake County until his retirement in 2007. He is a citizen of Utah. In 1994

he was cloaked under the authority and color of state law. Only intentional discrimination may violate §1981. General Bldg. Contractors Assn. v. Pennsylvania, 458 U.S. 375, 391 (1982).

A state court judge is absolutely immune from §1983 liability except when the judge acts in the clear absence of jurisdiction. Stump v. Sparkman, 435 U. 349, 356-57 (1978). The district court must determine whether a judge performed a "judicial" act or acted "in the clear absence of jurisdiction" by looking to "the nature of the act itself," i.e. whether they dealt with the judge in his judicial capacity. Id at 362.

See exhibit #7, i.e. a court reporter certified transcript- alleged to have been "lost". In the included transcript, Judge Hanson spoke for the state-making a number of statements indicating racial hostility and class based animus. e.g. "Everything the state is going to do in this trial is going to be prejudicial to you - its supposed to be..." Why should I believe you? (p. 8, 11-22-94 transcript, i.e. exhibit 7). Mr. Rudolph showed Judge Hanson the original police report on which he was initially arrested and told him "its the part marked in yellow." Id. Judge Hanson subsequently told prosecutor Charles Behrens and "standby counsel" David Sanders..., "and so to the extent that its possible to eliminate what actually occurred from evidence." p. 39, 11-22-94 transcript.

At trial, Murray City Detective Alex Huggard changed his story, he changed it again at trial Three (3). Originally, he changed his story at the behest of Timothy Hanson and Charles Behrens. Later, it was Pat Brian, Katherine Bernards-Goodman and Karen Stam. Federal Magistrate Judge Ronald N. Boyce confirmed perjured testimony was used.

4

See Entry #12 (1999) Exhibit 8. It seems to me that advocating obstruction of justice and subornation of perjury are not acts normally performed by a judge. His actions certainly did not conform to my expectations as a party to a fundamentally fair trial by an impartial tribunal.

Hafer v. Melo, 112 S.Ct. 358, elides the difference between Eleventh Amendment immunity and personal immunity. See Russ v. Uppah, 972 F.2d 300, 302-03 (10th Cir. 1992) (Explaining the difference between these immunity doctrines). The Eleventh Amendment precludes a federal court from assessing damages against state officials in their individual capacities. Hafer, 112 S.Ct. at 365.

In Office of Child Advocate v. Lindgren, 296 F.Supp.2d 178 (D.R.I. 2004), the court determined that the Ex parte Young exception simply stated is that the Eleventh Amendment does not bar a suit for prospective injunctive relief against a named state official for ongoing federal law violations. See Ex parte Young, 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908). (federal court sitting in equity may enjoin state officials who violate the federal constitution); R.I. Dept. of Envth. Mgmt. v. U.S., 304 F.3d 31, 52 (1st Cir. 2002) ; Westside Mothers v. Haveman, 289 F.3d 852, 860 (6th Cir. 2002); Doe v. Chiles, 136 F.3d 709, 720 (11th Cir. 1998); Ocean v. Kearney, 123 F.Supp.2d 618, 621 (S.D.Fla. 2000) (Ex parte Young exception applied to §1983 against the Secretary and District Manager of the Florida Department of Children and Family Services alleging violations of due process and the Child Welfare Act). An officer, who claims to act in the state's name and violates the Federal Constitution loses his official or representative character and is responsible for his individual conduct. Ex parte Young, 209 U.S. at 160, 28 S.Ct. 44. The State may not grant this officer any immunity from his responsibilities under the Constitution. id.

This case fits squarely within the Ex parte Young exception. "The

Judicial power created by Article III §1 of the Constitution is not whatever judges choose to do, see Valley Forge Christian College v. Americans United for separation of Church and State, inc., 454 U.S. 464, 487 (1982); cf. Grupo Mexicano de Desarrollo, SA. v. Alliance Bond Fund, Inc. 527 U.S. 308, 332-333 (1999), or even whatever Congress chooses to assign them, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 576-577 (1992); Chicago & Southern Air Lines, Inc. v. Waterman S.S. corp., 333 U.S. 103, 110-114 (1948). It is the power to act in the manner traditional for English and American court. One of the most obvious limitations imposed by that requirement is that judicial action must be governed by standard, by rule. Vieth v. Jubelirer, 541 U.S. ___ (2004).

### PUBLIC DEFENDERS ACTING UNDER THE COLOR OF STATE LAW

Karen Stam is a citizen of Utah employed with the Salt Lake County Public Defender's Office. Polk County v. Dodson, 454 U.S. 312, 325 (1981) held that a "public defender" does not act under color of state law when performing a lawyer's traditional role as counsel to a defendant in a criminal proceeding." Id.

The Tenth Circuit Court of Appeals has held that "[w]hen a plaintiff in a §1983 action attempts to assert the necessary state action by implicating state officials or judges in a conspiracy, mere conclusory allegations with no factual averments are insufficient; the pleadings must specifically show facts tending to show agreement and concerted action. Sooner Products v. McBride, 708 F2d 510, 512 (10th Cir. 1983). Sooner Products instructs that the pleading standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit. Id.

I've enclosed transcripts dated 10-17-95, in which imposed counsel conspired with then-prosecutor Barbra Byrne and breached the duty of loyalty to a client (I wasn't her client and I wasn't convicted at the time, as my conviction had been vacated). I was not in attendance in violation of my right to be in attendance at all hearings that have a bearing on the trial. See Rushen v. Spain, 464 U.S. 114 (1983). I went into the court room at the end of their collusory dis-cussion and made it abundantly clear that this person was not my lawyer. See, Exhibit #8 (i.e. 10-17-95 transcript). See letters from Court and LDA, 1-19-96 trans also 9

Karen Stam was imposed upon me without consent, authorization nor reques at another illegal hearing with recused Judge Pat Brian. See enclosed docket event listing at 2/9/96 and 2/12/96. i.e. Exhibit #9. The Constitution "does not force a lawyer on a defendant." Adams v. United States ex rel McCann, 317 U.S. 269, 279 (1942) Quoting Iowa v. Tovar, 541 U.S. ___ (2004).

The tenth circuit Court of appeals has held that an allegation of conspiracy constitutes a viable claim under §1983, even if the alleged conspiracy would be barred by the statute of limitations. See Robinson v. Maruffi, 895 F.2d 649, 654-655 (10th. Cir. 1990). Robinson alleged that the defendants conspired to engage in a malicious prosecution - (the tenth circuit) concluded the claim did not accrue until the end of the second trial. Rudolph had Three (3) trials notwithstanding acquittal of the predicate offense at trial one (1). The Utah Board of Pardons terminated these proceedings Dec.1, 201

: The U.S. Supreme Court has never followed the speculation in Preiser v. Rodrigue 411 U.S. 475, 499 (1973), that such a prisoner subject to "additional and unconstitutional restraint" might have a habeas claim independent of §1983... Members of the Court have expressed the view that unavailability of habeas

of habeas for other reasons may also dispense with the Heck requireme 512 U.S. at (Souter, J. concurring in judgment); Spencer v. Kenna, 523 U.S.1, 21- (1998)(Ginsburg, J., concurring). (The Courts in this manner made decisions bas upon erroneous views of the law, clearly erroneous facts and legal fictions). Thus, habeas was unavailable for other reasons, e.g. a refusal to review evider and objectively apply the law instead of manipulating it.

The Board of Pardons invalidated the sentence and the conviction in "collateral proceedings" which were impaired by abuse of discretion. Nichols v. Baer, No. 08-4158, 2009 U.S. App. Lexis 4302, at *4 (10th Cir. Mar. 5, 2009 (unpublished). (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). (Unpublished opinions are "junk" opinions -thats the reason they are unpublished). This case has taken 20 year. for the truth to come out. If the people in power had followed the proper rules and procedures - we would not even be in litigation at this time.

## PROSECUTORIAL IMMUNITY

The Supreme Court stated in Buckley v. Fitzsimmons, 113 S. Ct. 2606 (1993) [which] established a dichotomy between the prosecutor's role as an advocate for the state, which demands absolute immunity, and the prosecutor's performance of investigative functions, which warrants only qualified immunity. Id. at 2515-16

In Briscoe v. LaHue, 460 U.S. 325 (1983), held that all witnesses enjoy absolute immunity for their testimony in a prior trial. The tenth Circuit has aligned itself with the Sixth and Seventh Circuits in preserving the immunity of a witness who allegedly conspired to commit perjury. See Miller v. Glanz, 948 F.2d 1562 (10th Cir. 1991). Nothing precludes a criminal suit against those who conspire to deliver perjured testimony. Hunt v. Bennett, Slip op. No. 93-1305 (10th Cir. 199 Charles Behrens, Barbra Byrnes and Katherine Bernards Goodman

8

are citizens of Utah and prosecuted this matter.

Charles Behrens was the original prosecutor and is now a juvenile judge. Katherine Bernards Goodman is now also a judge. The Court was fully cognizant of the fact that double jeopardy, collateral estoppel & expost facto law barred Three successive bites of the apple In Muhammad v. Close, 540 U.S. ____ (2004), the Supreme Court determined that the decision of the Court of Appeals (6th Cir.) was flawed as a matter of fact and as a matter of law. Id. As a general rule parties should be held bound by whatever theory of law they argued below and absent some manifest injustice an appellate court should not allow a party to attempt a whole new theory after he has been unsuccessful at trial. See e.g. D H Overmyer Co v Loflin, 5th Cir. 1971, 440 F2d 1213. The rationale derives from the desirability of having all parties present their claims in court of first instance. See Hormel v. Helvering, 1941, 312 U.S. 552, 556-560, 61 S. Ct. 719, 721-723, 85 L. Ed. 1037, 1040-1043. See the two (2) arguments by Barbra Byrne and Katherine Bernards Goodman in which they conceded that the aggravated 'sexual assault' charge could not and would not be relitigated. She and Judge Brian altered the elements and relitigated the charge, and knowingly and willingly violated my 5th, 6th & 14 Amendment rights. See the 4/30/96 docket event listing. See exhibit #10. See also exhibit 7 which proves they were aware that they were presenting perjured testimony. I've highlighted relevant parts to make it easier to find the "truth" and other procedural irregularities - that were overlooked or misapprehended. If the transcripts had been read - dissarray & disuniformity would and could have been exposed years ago. This legal charade was smoke in mirrors and "hide the ball."

### THE UTAH BOARD OF PARDONS INVALIDATED THE
### SENTENCE AND CONVICTION AND IS LIABLE FOR PRIOR CONDUCT

Michael Sibbett, Keith Hamilton, Jesse Gallegos, Curtis Garner and Jerem Holt are citizens of Utah who were acting under color of state law and authority when their un-constitutional acts occurred.

Michael Sibbett was apprised of the fact that Mr. Rudolph was not required to enroll in sex offender therapy as he had not been convicted of a sexual offense. The original hearing was Sept. 9, 2001 with Curtis Garner presiding. These people at the time, did not allow for due process nor an attorney and arbitrarily & capriciously ignored the recommendation of the Central Utah Facility That Rudolph be granted a 2001 parole date.

Keith Hamilton signing for Michael Sibbett generated a result that was not only unconstitutional - but included unconscionable, unilateral terms and conditions that Mr. Rudolph had not been convicted of. i.e abide by Sex offender special conditions and added Three more years in an attempt to get Mr. Rudolph to agree to the terms or be incarcerated until he agreed. This violated due process and was definitely coercive, and violative of my 1st, 6th, 8th, 13th and 14th amendment rights. e.g. being held hostage at threat of life imprisonment for refusing to be forced to sign an illegal contract. See Exhibit # 11

The general principles of contract law guide the Court's evaluation of the governments obligations under the agreement. U.S v. Pena, 216 F. 1204, 1209 (10th Cir 1998). Quoting Daniels v. Colo. Dept of Corr, Civ. action

No. 08-cv-01586-LTB-MEH. US District Court for District of Colorado (2009).
Mr. Rudolph did not sign the agreement and was retaliated against because he pursued his Constitutional right to appeal and exhausted his habeas remedies, as well. In Daniels- the Court considered the potential adverse consequences of a correctional facilities classification of an inmate as a sex offender, if the inmate has not been convicted of a sex offense, may be "something of value entitled to procedural due process." Chambers v. Colorado Dep't of Corrections, 205 F. 3d 1237, 1243 (10th Cir. 2000). If an inmate has not been convicted of a sex offense, the CDOC must afford the inmate a hearing so that he or she may contest the sexual basis of th. conviction. Gwinn v. Miller, 354 F. 3d 1211, 1218 (10th Cir. 2004). Id Daniels

In 2004, under the same tyrannical Chairman Michael Sibbeth, the Utah Board of Pardons again attempted to force Mr. Rudolph to sign another illegal contract with the overt threat of rescission of the 2004 parole date. See The institutional parole memo included in Exhibit 11, by Jeremy Holt. See the subsequent rescission by Michael Sibben with the overt unConstitutional threat to sign or remain in prison. This added an additional Two (2) years of false imprisonment and overt violation of Due Process. Mr. Rudolph ceased attending Board of Pardons Hearings and remained in prison for Two (2) additional years and suffered enormous emotional distress. Finally, in 2008 the Board of Pardons granted Parole.
Note: There was never a binding agreement nor a meeting of th minds as Mr. Repudiated the terms and conditions.

Thus, a total of seven years was added to the original hearing's recommendat. of 2001 in which Keith Hamilton acting for Mike Sibbett started this scheme.

Jesse Gallegos issued a Board warrant in 2012 based on the false assertion that I violated a parole agreement that never existed and knew or should have known, because when I asked for a special attention hearing, I stated as much. See Exhibit #12. I was wrongfully arrested interstate-which brings in the R.I.C.O. statetutes and a pattern of illegal acts. e.g. Three trials, constant wrongful rescissions via threats and intimidation. Abuse of power and process by people who are supposed to uphold the law of the land.

In order to recover damages for allegedly un Constitutional conviction or imprisonment, or other harm by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or imprisonment has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal courts issuance of a writ of habeas corpus. 28 U.S.C. §2254. As previously stated, The Utah Board of Pardons invalidated the conviction and sentence Dec.1, 2014. The new-Board of Pardons seems to be acting in a Constitutional fashion. See Butler v. Compton, 482 F.3d 1277. See also Mitchell v. Maynard, 80 F.2d 1433, 1441 (10th Cir. 1996). Supervisory status alone does not support a §1983 liability. As the argument, supra demonstates these parties jointy participated

12

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Id. Mitchell.

Wherefore, I Henry Lee Respectfully and prayerfully request the Court to appoint counsel and grant monetary relief, compensation damages, treble damages because of malice, fraud and intentional discrimination, punitive damages because of the outrageous conduct and conspiratorial cover up. In light of my story finally coming out—I need a lawyer. See Lewis v. Casey, 518 U.S. 343, 356 (1996) and Bounds v. Smith, 430 U.S. 817, 828 (1977). After 20 years, will the Court assist me in righting an injustice?

Note: all documents were written/generated by the parties as I—as a number of individuals have been made an invisible slave—by mere words, sometimes prevarication with no regard for trut or justice.

Dated this 16th day of September 2015.

Henry L. Rudolph   Pro Se

Title 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Id. Mitchell.

    Wherefore, I Henry Lee Respectfully and prayerfully request the Court to appoint counsel and grant monetary relief, compensatory damages, treble damages because of malice, fraud and intentional discrimination, punitive damages because of the outrageous conduct and conspiratorial cover up. In light of my story finally coming out — I need a lawyer. See Lewis v. Casey, 518 U.S 343, 356 (1996) and Bounds v. Smith, 430 U.S. 817, 828 (1977). After 20 years, will the Court assist me in righting an injustice? Note: all documents were written/generated by the parties as I, — as a number of individuals have been made an invisible slave — by mere words, sometimes prevarication with no regard for truth or justice.

    Dated this 16th day of September 2015.

        Henry L. Rudolph   Pro Se

Title 42 U.S.C. §1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Id. Mitchell.

Wherefore, I Henry Lee Respectfully and prayerfully request the Court to appoint counsel and grant monetary relief, compensatory damages, treble damages because of malice, fraud and intentional discrimination, punitive damages because of the outrageous conduct and conspiratorial cover up. In light of my story finally coming out—I need a lawyer. See Lewis v. Casey, 518 U.S 343, 356 (1996) and Bounds v. Smith, 430 U.S. 817, 828 (1977). After 20 years, will the Court assist me in righting an injustice? Note: all documents were written/generated by the parties as I,—as a number of individuals have been made an invisible slave—by mere words, sometimes prevarations with no regard for truth or justice.

Dated this 16th day of September 2015.

Henry L. Rudolph  Pro Se

ERIN RILEY (8375)
Assistant Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
Attorneys for Respondent
160 East 300 South, 6th Floor
P.O. Box 140854
Salt Lake City, Utah 84114-0854
Telephone: (801) 366-0180

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JAN 1 2 2009

BY D. MARK JONES, CLERK

DEPUTY CLERK

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

| | |
|---|---|
| HENRY L. RUDOLPH, | OBJECTION TO MOTION TO REMAND OR TO SUPPLEMENT THE RECORD |
| Petitioner/Appellant, | |
| vs. | Appellate case no. 03-4192 |
| HANK GALETKA, Warden, et al., | District Court case no. 99-CV-371 |
| Respondent/Appellee. | |

---

Respondent/Appellee Galetka, by and through his attorney, Assistant Attorney

General Erin Riley, submits the following objection to petitioner/appellant Rudolph's motion

to remand or to supplement the record. In support of this objection, counsel states as follows:

1.    **Relevant Dates.**  Almost five (5) years ago, on May 27, 1999, Rudolph filed a petition

for writ of habeas corpus in the federal district court.  Following a complicated procedural

history, Rudolph filed a notice of appeal on August 1, 2003.[1]  Rudolph filed his pro se brief

---

[1] For a more detailed procedural history, see the *Statement of the Case* in Appellee
Galetka's original response brief, filed on November 5, 2003.

on September 8, 2003.  Galetka filed his response brief on November 5, 2003.  On January

20, 2004, this Court entered an Order that granted a COA solely on the issue of whether

Rudolph's double jeopardy rights were violated.  It also appointed counsel to represent

Rudolph.  Rudolph's supplemental brief was due within forty-five (45) days of the date of

the order - thus, the brief was due by March 5, 2004.

2.      **Rudolph's motion.**  On March 1, 2004, Rudolph filed a motion to remand for

additional trial-court proceedings, or to supplement the record on appeal.  In his motion,

Rudolph argues that the federal district court's failure to obtain the entire state court record

before adjudicating the petition calls for reversal and remand.  Rudolph's argument presumes

that the federal district court was required to review the entire state court record.  Respondent

Galetka argues that the district court appropriately reviewed all that was necessary to make

its adjudication.

3.      **Summary of Objections.**  Respondent Galetka objects to the motion to remand or

supplement the record because the federal district court was not required to review the entire

state court record.  Therefore, remand is not required and the record does not need to be

supplemented.  In addition, the motion is untimely, and the issue raised should more properly

be addressed in full briefing rather than in a motion to remand.

4.      **The issue should be raised in Rudolph's Brief, not in a motion to remand.**

Rudolph argues that the district court's failure to obtain certain state-court records and

transcripts before adjudicating the habeas petition calls for reversal and remand to the district

2

court. This issue is more properly raised by briefing rather than in a motion to remand. This issue raises significant questions concerning what kind of review is required and the extent of review required by the federal district court under the AEDPA. This is not an issue which should be summarily dealt with in a motion to remand.

5.      **The motion is untimely.**  Tenth Circuit Rule 27.2(a)(1)(c) allows parties to file a motion to remand for additional trial court or administrative proceedings. However, such a motion "must be filed with 15 days after the notice of appeal is filed. A motion filed later must explain why it could not have been filed in the 15-day period."

The motion is clearly untimely. The notice of appeal was filed on August 1, 2003. The motion was not filed until March 1, 2004, seven (7) months after the notice of appeal, almost six (6) months after Rudolph filed his initial pro se brief, and almost four (4) months after Galetka had already filed his initial response brief. Counsel for Rudolph points out that he could not file the motion within 15 days because he was not appointed to represent Rudolph until January 20, 2004. However, counsel also did not file the motion within 15 days of being appointed. The motion was not filed until six (6) weeks after counsel for Rudolph was appointed, only four (4) days before his brief was due. Therefore, the motion is untimely and the issue should more properly be raised in Rudolph's brief, rather than in a motion to remand.



6.  → **The AEDPA applies.** The provisions of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), applies to petitions filed after

its effective date. <u>Williams v. Taylor</u>, 529 U.S. 420, 429, 120 S.Ct. 1479, 1486 (2000);

<u>Martinez v. Zavaros</u>, 330 F.3d 1259, 1262 (10th Cir. 2003). The AEDPA became effective

on April 24, 1996, *see id.*; <u>Rudolph filed his petition on May 27, 1999</u>. The AEDPA

therefore applies to Rudolph's petition. ~~Lindh v. Murphy~~  1995  Art. VI cl. 2

7.    **The AEDPA changed a district court's review.** In his motion, Rudolph fails to

address the fact that the AEDPA has changed the way that federal district courts review

claims that have already been addressed by state courts. The AEDPA places a new constraint

on the power of a federal district court to grant a state prisoner's petition with respect to

claims adjudicated on the merits in state court. <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct.

1495, 1523 (2000). "In the post AEDPA era, we do not conduct an independent review of

claims that have been addressed on the merits by the state courts." <u>Breedlove v. Moore</u>, 279

F.3d 952, 960 (11th Cir. 2002).

Under the AEDPA, a federal court may not grant a writ of habeas corpus with respect

to any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d)(1)-(2); <u>and see</u> <u>Williams v. Taylor</u>, 529 U.S. at 399, 404-5.

Furthermore, under section 2254(e)(1) "a determination of a factual issue made by a

State court shall be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A.

§ 2254(e)(1) (Supp. 2000). See also Martinez v. Zavaros, 330 F.3d 1259, 1262 (10th Cir.

2003) and Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002).

"AEDPA circumscribes a federal habeas court's review of a state court decision."

Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172 (2003).  Lockyer noted that: ←

"The Ninth Circuit requires federal habeas courts to review the state court decision *de novo*

before applying the AEDPA standard of review."  However, the United States Supreme

Court said: "We disagree with this approach." Lockyer, 538 U.S. at 71.

8.     **The District Court's review was appropriate under the AEDPA.**  The motion to

remand should be denied because under the AEDPA and the circumstances of this case, the

district court was not required to review the entire trial court record before adjudicating the

petition for writ of habeas corpus.

In his motion, Rudolph asserts that:

The district court decided two separate double-jeopardy issues.  The court first
decided whether Mr. Rudolph's acquittal at his first trial on the charge of
aggravated sexual assault precluded his later conviction for aggravated
burglary . . . The second issue the district court decided is whether the mistrial
declared at Mr. Rudolph's second trial barred his prosecution . . . at a third
trial.

*miller-El v Cockrell*

(Motion at 1-2).

Rudolph misstates what the district court "decided."  In addition, Rudolph's statement

does not accurately reflect what the district court is supposed to do in its review. Rudolph's

claims were previously adjudicated in Utah state court. Therefore, under the AEDPA, the

district court was not "deciding" the double-jeopardy issues.  The federal district court was reviewing the state court action to determine whether the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In addition, the federal district court was required to presume that determinations of factual issues made by the State court were correct. *Medina*,

9.      **The district court was not required to review the entire trial record.**  A review of the entire trial record may sometimes be necessary to resolve a federal habeas issue.  For example, an independent review of the record is necessary when the state court has not articulated its reasoning for denying relief on the merits.  *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999).[2]  Thus, Galetka agrees with Rudolph that "where records from the state court proceedings are essential for determining an issue in a habeas corpus petition, a district court errs in deciding the issue without consulting the records." (motion at 5).  See *Herrera v. LeMaster*, 225 F.3d 1176 (10th Cir. 2000).[3]

*Miller-El v. Cockrell*

_____

[2]  "The independent review is not, however, 'a full *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.'"  *McAdoo v. Elo*, 346 F.3d 159, 170 (6th Cir. 2003) (citing *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

[3]  But some of the cases cited by Rudolph in support of this argument are inapplicable or distinguishable because they apply pre-AEDPA standards.  In *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998), Magouirk filed his habeas corpus petition in 1993, prior to enactment of the AEDPA.  *Id.* at 354.  Therefore, "Magouirk's claims are governed by pre-AEDPA law."  *Id.* at 356.  In *Jones v. Wood*, 114 F.3d 1002 (9th Cir.

6

However, review of the entire record from the state court proceeding is not always essential for determining an issue. Under the AEDPA, a federal district court is not always required to review the entire record or trial transcripts because it is frequently unnecessary. "When the state court has articulated its reasoning and cited facts supporting its decision, however, and depending on the nature of the habeas claim, the district court may have enough facts before it to resolve an issue without reviewing the whole record." Pierce v. Lucero, 202 F.3d 282, 1999 WL 1101251 (10th Cir. (N.M.)), cert denied, 529 U.S. 111, 120 S.Ct. 1967 (2000) (unpublished decision, cited pursuant to 10th Cir. R. 36.3) (copy attached as addendum A).

In this case, the Utah Supreme Court fully articulated its reasoning for denying Rudolph relief on his double jeopardy claims. The federal district court was aware of the facts on which the Utah Supreme Court based its ruling, because the essential facts were set out in the State's response to the federal petition, in the appellate briefs (which were included in the addenda),[4] and in the Utah Supreme Court's ruling in State v. Rudolph, 970 P.2d 1221,

_____

1997), Jones filed his habeas corpus petition in 1994, prior to enactment of the AEDPA. Id. at 1007. Although the petition in Adams v. Holland, 330 F.3d 398 (6th Cir. 2003) was filed in 1999, after enactment of the AEDPA, the opinion fails to even mention the AEDPA standard of review and cites pre-AEDPA case law for its conclusion that a federal district court must review the entire state court trial transcript. Id. at 406.

[4] In his motion, Rudolph asserts that state court pleadings were not provided to the federal district court. Presumably Rudolph is merely referring to items from the underlying criminal trial record, because copies of the appellate briefs in the Utah Supreme Court case were provided to the federal district court. (See docket # 65, addenda A, B and C).

7

*not 11a/transcripts*

1232 (Utah 1998) (copy attached as addendum B). The necessary facts as determined by

the state court, were adequately presented and Rudolph failed to rebut the presumption of

correctness of the facts by clear and convincing evidence. Therefore, the federal district

*TRANSCRIPT 2-5-96*
*5-10-96*
court was not required to review the entire trial record and transcripts to make its own de

novo determination of the facts. See Payne v. McKune, 280 F.Supp.2d 1259, 1261, n. 1 (D.

Kan. 2003). Indeed, the district court was required to presume that the State court's

determination of the factual issues was correct. 28 U.S.C.A. § 2254(e)(1) (Supp. 2000).

10. **The facts in this case.** In considering the double jeopardy allegations, the Utah

Supreme Court followed the applicable U.S. Supreme Court decision in Dowling v. United

States, 493 U.S. 342, 350, 110 S.Ct. 668, (1990), in determining that the petitioner "bears the

burden of demonstrating that the issue was actually decided in his favor in the first

proceeding." Rudolph, 970 P.2d at 1231. The Utah Supreme Court then noted the fact that

during the first trial, Rudolph's standby counsel argued that the State had failed to prove the

aggravating circumstances element of aggravated sexual assault. Id. at 1232. Rudolph never

disputed the fact that his standby counsel made this argument. In his petition for writ of

habeas corpus, Rudolph simply stated: "the jury necessarily found that Rudolph lacked the

intent to commit a sexual assault." (docket, #3 at p. 5). The Utah Supreme Court held that

Rudolph could not "show that the jury necessarily acquitted him of aggravated sexual assault

on the basis that he lacked the requisite intent." Id. at 1232. The acquittal may have been

based on failure to prove the aggravating circumstances. Id.

As to the second part of Rudolph's double jeopardy claim, the Utah Supreme Court

noted the fact that Rudolph made two prior motions for a mistrial before it was actually

declared. Rudolph, 970 P.2d at 1232. Rudolph never disputed this fact. The Utah Supreme

Court then pointed out that "if a defendant seeks a mistrial, he [generally] waives any defense

he might otherwise assert based upon double jeopardy, even though the prosecution or the

court provoked the error." Rudolph, 970 P.2d at 1232 (citing State v. Trafny, 799 P.2d 704,

709 (Utah 1990). However, the court "also noted that a narrow exception exists 'where bad

faith conduct by a judge or prosecutor is intended to provoke a mistrial so as to afford the

prosecution a more favorable opportunity to convict.'" Id. See also Oregon v. Kennedy, 456

U.S. 667, 673 102 S.Ct. 2083 (1982). Therefore, the Utah Supreme Court noted the fact that

in granting the mistrial, the trial court did not allude to any misconduct on the part of the

prosecutor. Rudolph, 970 P.2d at 1232. In addition, it noted the fact that Rudolph "himself

opened the door into the very questioning that he now claims was prejudicial and warranted

the mistrial." Rudolph, 970 P.2d at 1232. The Utah Supreme Court determined that Rudolph

"cannot demonstrate that the judge or the prosecutor provoked the mistrial, let alone that they

did so intentionally. Therefore, double jeopardy did not bar his third trial." Id.

In this case, the appellate briefs thoroughly set forth the facts from the trial court. In

its opinion, the Utah Supreme Court also set forth the essential facts supporting its decision,

and fully articulated its reasoning for denying relief based on Rudolph's claim that his

convictions were barred by the protection against double jeopardy. Therefore, the federal

district court had all of the information necessary for its review, and was not required to review the entire record or trial transcript. Therefore, no remand or supplementation of the record is required, and Rudolph's motion should be denied. #53

11.     **Rudolph failed to argue that the district court must review the trial record.**  In the district court below, Rudolph never argued that the federal district court must review the entire trial court record and transcripts.  Under section 2254(e)(1) "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (Supp. 2000).  The federal district court was required to presume that the Utah State Court's factual determinations were correct.  Rudolph had the burden of rebutting that presumption.  Rudolph failed to rebut that presumption.  In addition, he failed to ever request or argue that the federal district court must independently review the trial record and transcripts to make its own de novo determination of the facts.

Under the AEDPA, if a petitioner does not dispute the facts, the federal district court must deny the petition unless the state court decision was contrary to, or involved an unreasonable application of clearly establish United States Supreme Court precedent. LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999).

12.     **Rudolph has failed to argue that the factual determinations were erroneous.**  In his motion to remand, Rudolph argues that the double-jeopardy issues are fact dependent, and therefore the federal district court could not perform its function without reviewing the

10

underlying trial court record.   Respondent Galetka argues that the necessary facts were adequately presented to the federal district court in the State's response, the appellate briefs, and the Utah Supreme Court opinion. The only reason the federal district court would have had to independently review the trial court record itself was if Rudolph was able to rebut the presumption of correctness of those facts. This Rudolph failed to do.   In order to rebut the presumption of correctness, Rudolph must establish that the facts presented to the federal district court were erroneous.   However, in his motion requesting a remand, Rudolph has failed to even assert that the facts presented to the federal district court were erroneous, or that the Utah Supreme Court's summary of the facts was erroneous.   Therefore, the motion for remand should be denied.

13.     **The motion to supplement the record should also be denied.**  In his motion, Rudolph asks this Court to remand to the district court so that the district court may review the entire state court record and transcripts.   In the alternative, Rudolph asks this Court to take judicial notice of the state court records and to supplement the record on appeal with those records.

Although this Court has the authority to take judicial notice of certain records, it would not be appropriate to simply supplement the record on appeal with items that were not reviewed by the district court.   "Federal Rule of Appellate Procedure 10(e) authorizes the modification of the record only to the extent it is necessary to 'truly disclose[ ] what occurred in the district court.' Fed R. App. P. 10(e).   This court will not consider material outside the

record before the district court." United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir.

2000); See also Anthony v. United States, 667 F.2d 870, 875 (10th Cir. 1981), cert.denied,

457 U.S. 1133, 102 S.Ct. 2959 (1982); Allen v. Minnstar, Inc., 8 F.3d 1470, 1475-76 (10th

Cir. 1993). Therefore, the motion to supplement the record should also be denied.

## CONCLUSION

Respondent/appellee Galetka has no objection to a stay of the briefing schedule

pending resolution of the motion to remand or supplement the record.

For the reasons set forth above, Galetka respectfully requests that this Court deny

Rudolph's motion to remand or to supplement the record, and requests that the Court issue

a new briefing schedule. — O'brien, McKay did so. —

DATED this 8th day of March, 2004.


                                   MARK L. SHURTLEFF
                                   Utah Attorney General


                                   ERIN RILEY
                                   Assistant Attorney General
                                   Attorneys for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on the __8th__ day of March, 2004, I mailed a copy of the foregoing

OBJECTION TO MOTION TO REMAND OR TO SUPPLEMENT THE RECORD to:

Howard A Pincus
Office of the Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202

counsel for petitioner/appellant Rudolph

_Lee Nakamura_

2

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

Rudolph,

      Plaintiff,                    NOTICE OF COURT ACTION ON
APPLICATION TO PROCEED
         vs.                     IN FORMA PAUPERIS

Huggard,

      Defendant.                Case No.  2:95-cv-00431
                               Judge J. Thomas Greene

    Your application to proceed in forma pauperis was reviewed by the court and has been granted.  Please use the case number and caption above in all successive pleadings.

                               MARKUS B. ZIMMER,
                               Clerk of Court

                By:

                               Deputy Clerk

DATE:     May 11, 1995

2

*Mark Hireto*
*or whom it may*
*concern:*
*White Collar*
*18 U.S.C. §1001, §1506,*
*§1512, §2071, §2073,*
*§1621, §1622, §1623*

WAYNE A. FREESTONE
DAVID J. ANGERHOFER
CONTRACT ATTORNEYS
50 West 300 South, Suite 900
Salt Lake City, Utah   84101
(801) 322-1503
(801) 363-0844

*I have have the*
*Transcripts —*
*The F.B.I has*
*The transcripts!*
*please Call*

M E M O R A N D U M

TO:    HENRY RUDOLPH USP #23634

DATE:  ~~■■■■■■■■■■■■~~

RE:    REQUESTED LEGAL SERVICES

Please be advised that your Civil Rights Complaint and
accompanying documents for <u>RUDOLPH vs. HUGGARD,   et. al.</u>   These
have been mailed to the court.

Please be advised that your ~~■■■■■■■■■■■■■■■■■■■■■■■~~
~~■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■~~

Thank You.

CONTRACT ATTORNEYS

_____

*§2254 filed pre A E D P A. Thus, A E D P A is not applicable.*
*2. Transcripts had significant portions missing only (As presentation & Testimony*
*3. Law of the Case 99-4207. to claims. "5 unexhausted"*
*4. mandamus 03-4138*
*5. RNB former cnsl, UDOC, Asst A.G.*
*6. Entry # 12. Perjury by state's ★ witness. 3 clearly erroneous facts*
  *-1, trans not destroyed*
  *2. Petr. did appeal #8 C to Ut. S. Ct.*
  *3. Faretta right presented to Ut. S. Ct*
*7. Trans "destroyed" only after USCA (10) sd to review trial & App. RCDs.*
*8. Utah Sup. Ct. docket proves trans. were not destroyed ½ e Ct granted motion*
  *to supp the record.*
*9. Proof = motion to supp. rcd.*
*10. Entry # 25 by Fed. Mag.*
*11. J. Timothy R. Hanson's 'instructions' to eliminate what actually*
  *occurred from evidence.*
*12. Motion for Remand*
*13. A G agrees that transcripts needed — wrongly applies AEDPA*

D O C K E T *4A*

THIRD DISTRICT COURT - SLC

TUESDAY     MAY 21, 1996
                Page   5
                      3:50 PM

**Defendant**                Reference:941012451        MRP Case: 941901206 FS
                                                         Agency No.: 94-8985
     RUDOLPH, HENRY LEE                                   State Felony

| | | | |
|---|---|---|---|
| 09/27/95 | REM | scheduled for 10/06/95 at 0900 A in room M with TRH | EVT |
| | FILED: | REMITTITUR FROM SUPREME COURT (S.C. #950057) REMANDED | SC |
| 09/28/95 | FILED: | LETTER FROM SUPREME COURT OF COPY OF ORDER (SIGNIFICANT | SC |
| | | PORTIONS OF TRANSCRIPT MISSING DUE TO TECHNICAL PROBLEMS | SC |
| | | REMANDS THE MATTER FOR RETRIAL      "th cough" | SC |
| 10/05/95 | FILED: | APPEARANCE OF COUNSEL (ATD/K. STAM) | TG |
| 10/06/95 | FILED: | M.E. (HRG ON REMAND, COURT RECUSES, AND REFERS CASE TO | EVT |
| | | PRESIDING JUDGE FOR REASSIGN, DEF TO BE TRANSFERED FROM | EVT |
| | | USP & HELD IN SL CO. JAIL PEND DSP) | EVT |
| | Hearing (HEARING ON REMAND): | JUDGE: TIMOTHY R HANSON | EVT |
| | Deft Present | | EVT |
| | ATD: STAM, KAREN | ATP: BYRNE, BARBARA | EVT |
| | CUSTODY: County Sheriff | | EVT |
| | FILED: | APPEARANCE OF CO-COUNSEL (ATD/K. ROGERS) | TG |
| 10/10/95 | FILED: | CT'S ME DECISION (RE: RECUSAL) | EVT |
| 10/11/95 | FILED: | MINUTE ENTRY-CASE IS RE-ASSIGNED TO JUDGE BRIAN | EHM |
| | Judge ID changed from TRH to PBB | | EHM |
| | SCH | scheduled for 10/13/95 at 10:30 A in room G with PBB | BHA |
| 10/13/95 | Hearing (SCHEDULING CONF.): | JUDGE: PAT B BRIAN | BHA |
| | Deft Present | | BHA |
| | ATD: STAM, KAREN S. | ATP: ELLETT BUD | BHA |
| | FILED: | MINUTE ENTRY: DEF WAS NOT TRANSPORTED FOR HEARING TODAY- | BHA |
| | | DEF IS NOW IN SL CO JAIL-BW TO ISSUE TO BE HELD UNTIL | BHA |
| | | 10/20/95 AT 10:30 AM | BHA |
| 10/17/95 | SCH | scheduled for 10/20/95 at 10:30 A in room G with PBB | BHA |
| 10/19/95 | FILED: | FORMAL REQUEST FOR DISCOVERY PURSUANT TO RULE 16 OF THE | BHA |
| | | RULES OF CRIMINAL PROCEDURE | BHA |
| 10/20/95 | Hearing (SCHEDULING CONF.): | JUDGE: PAT B BRIAN | BHA |
| | Deft Present | | BHA |
| | ATD: STAM, KAREN S. | ATP: BYRNE, BARBARA J. | BHA |
| | FILED: | MINUTE ENTRY: MOTN HEARING SET FOR 12/1/95 AND TRJ SET | BHA |
| | | FOR 12/11/95 (3 DAYS) | BHA |
| | MO | scheduled for 12/ 1/95 at 10:00 A in room G with PBB | BHA |
| | TRJ | scheduled for 12/11/95 at 9:00 A in room G with PBB | BHA |
| 10/25/95 | FILED: | MINUTE ENTRY-CASE REASSIGNED TO JUDGE PUELLER | EHM |
| | Judge ID changed from PBB to SP | | EHM |
| 10/26/95 | FILED: | MINUTE ENTRY- SCHED CONF SET 11/6/95 10:30 AM | KBG |
| | MO | on 12/ 1/95 was cancelled | KBG |
| | TRJ | on 12/11/95 was cancelled | KBG |
| | SCH | scheduled for 11/ 6/95 at  1:30 P in room K with SP | KBG |
| 11/06/95 | Continuance | JUDGE: SANDRA PEULER | KBG |
| | TAPE: 1 | COUNT:   1:58 | KBG |
| | Deft Present | | KBG |
| | ATD: ROGERS, KRISTINE M | ATP: BYRNE, BARBARA J. | KBG |
| | HRG | scheduled for 11/13/95 at 0130 P in room K with SP | KBG |
| | CUSTODY: County Sheriff | | KBG |
| | FILED: | MINUTE ENTRY- SCHED CONF CONTD TO 11/13/95 1:30 PM TO | KBG |
| | | HEAR ANY MOTIONS THAT HAVE BEEN FILED. | KBG |
| 11/08/95 | FILED: | COPY OF MEMO SENT TO MR RUDOLPH FROM CONTRACT ATTORNEYS | DBG |
| 11/09/95 | FILED: | MINUTE ENTRY- CASE ASSIGNED TO JUDGE PUELER IN ERROR. | KBG |
| | | REFERRED TO JUDGE BRIAN FOR SCHEDULING | KBG |

J.B. "cough"

Stm Z 1 Hrs TO KR

```
                              D O C K E T                                Page    5
THIRD DISTRICT COURT - SLC                        TUESDAY    MAY 21, 1996
                                                                3:50 PM
Defendant                  Reference:941012451     MRP Case: 941901206 FS
                                                   Agency No.: 94-8985
   RUDOLPH, HENRY LEE                              State Felony
```

| | | |
|---|---|---|
| 09/27/95 | REM       scheduled for 10/06/95 at 0900 A in room M with TRH | EVT |
|          | FILED: <u>REMITTITUR FROM SUPREME COURT (S.C.#950057) REMANDED</u> | SC |
| 09/28/95 | FILED: LETTER FROM SUPREME COURT OF COPY OF ORDER (SIGNIFICANT | SC |
|          | PORTIONS OF TRANSCRIPT MISSING DUE TO TECHNICAL PROBLEMS | SC |
|          | REMANDS THE MATTER FOR RETRIAL   *th cough* | SC |
| 10/05/95 | FILED: APPEARANCE OF COUNSEL (ATD/K. STAM) | TG |
| 10/06/95 | FILED: M.E. (HRG ON REMAND, COURT RECUSES, AND REFERS CASE TO | EVT |
|          | PRESIDING JUDGE FOR REASSIGN, DEF TO BE TRANSFERRED FROM | EVT |
|          | USP & HELD IN SL CO. JAIL PEND DSP) | EVT |
|          | Hearing (HEARING ON REMAND):      JUDGE: TIMOTHY R HANSON | EVT |
|          | Deft Present | EVT |
|          | ATD: STAM, KAREN           ATP: BYRNE, BARBARA | EVT |
|          | CUSTODY: County Sheriff | EVT |
|          | FILED: APPEARANCE OF CO-COUNSEL (ATD/K. ROGERS) | TG |
| 10/10/95 | FILED: CT'S ME DECISION (RE: RECUSAL) | EVT |
| 10/11/95 | FILED: MINUTE ENTRY-CASE IS RE-ASSIGNED TO JUDGE BRIAN | EHM |
|          | Judge ID changed from TRH to PBB | EHM |
|          | SCH       scheduled for 10/13/95 at 10:30 A in room G with PBB | BHA |
| 10/13/95 | Hearing (SCHEDULING CONF.):      JUDGE: PAT B BRIAN | BHA |
|          | Deft not present | BHA |
|          | ATD: STAM, KAREN S.           ATP: ELLETT  BUD | BHA |
|          | FILED: MINUTE ENTRY: DEF WAS NOT TRANSPORTED FOR HEARING TODAY- | BHA |
|          | DEF IS NOW IN SL CO JAIL-BW TO ISSUE TO BE HELD UNTIL | BHA |
|          | 10/20/95 AT 10:30 AM | BHA |
| 10/17/95 | SCH       scheduled for 10/20/95 at 10:30 A in room G with PBB | BHA |
| 10/19/95 | FILED: FORMAL REQUEST FOR DISCOVERY PURSUANT TO RULE 16 OF THE | BHA |
|          | RULES OF CRIMINAL PROCEDURE | BHA |
| 10/20/95 | Hearing (SCHEDULING CONF.):      JUDGE: PAT B BRIAN | BHA |
|          | Deft Present | BHA |
|          | ATD: STAM, KAREN S.           ATP: BYRNE, BARBARA J. | BHA |
|          | FILED: MINUTE ENTRY: MOTN HEARING SET FOR 12/1/95 AND TRJ SET | BHA |
|          | FOR 12/11/95 (3 DAYS) | BHA |
|          | MO        scheduled for 12/ 1/95 at 10:00 A in room G with PBB | BHA |
|          | TRJ       scheduled for 12/11/95 at  9:00 A in room G with PBB | BHA |
| 10/25/95 | FILED: MINUTE ENTRY-CASE REASSIGNED TO JUDGE PUELLER | EHM |
|          | Judge ID changed from PBB to SP | EHM |
| 10/26/95 | FILED: MINUTE ENTRY- SCHED CONF SET 11/6/95 10:30 AM | KBG |
|          | MO        on 12/ 1/95 was cancelled | KBG |
|          | TRJ       on 12/11/95 was cancelled | KBG |
|          | SCH       scheduled for 11/ 6/95 at  1:30 P in room K with SP | KBG |
| 11/06/95 | Continuance          JUDGE: SANDRA PEULER | KBG |
|          | TAPE: 1          COUNT:   1:58 | KBG |
|          | Deft Present | KBG |
|          | ATD: ROGERS, KRISTINE M           ATP: BYRNE, BARBARA J. | KBG |
|          | HRG       scheduled for 11/13/95 at 0130 P in room K with SP | KBG |
|          | CUSTODY: County Sheriff | KBG |
|          | FILED: MINUTE ENTRY- SCHED CONF CONTD TO 11/13/95 1:30 PM TO | KBG |
|          | HEAR ANY MOTIONS THAT HAVE BEEN FILED. | KBG |
| 11/08/95 | FILED: COPY OF MEMO SENT TO MR RUDOLPH FROM CONTRACT ATTORNEYS | DBG |
| 11/09/95 | FILED: MINUTE ENTRY- CASE ASSIGNED TO JUDGE PEULER <u>IN ERROR.</u> | KBG |
|          | REFERRED TO JUDGE BRIAN FOR SCHEDULING   J.B. *cough* | KBG |

*Stam attno to KR*

2

Jtah Supreme Court

2/05/1997                                                    ,Page    1

Docket Event Listing (Internal)

itle: The State of Utah v. Henry Lee Rudolph

ocket No: 950057      Docket Date:  2/02/1995
op. Type: Criminal Appeal
  Agency: THIRD DIST CT SALT LAKE DIV I    Case:941901206
  Status: Closed

State of Utah                    AP    GRAHAM, JAN
                                       BEADLES, JAMES H.
Rudolph, Henry Lee               A     WATT, JOAN C.
                                       HEINEMAN, ROBERT K.

| Date | Action | Disposition | Disp. Date |
|---|---|---|---|
| 2/02/1995 | Transcript Request Received | | |
| | Hearings held: 9-9-94: 9-19-94: 10-14-94: 10-21-94: 10-28-94 | | |
| | 11-18-94: 11-22-94: 11-28-94: 11-29-94: 12-01-94: 1-13-95. | | |
| 2/02/1995 | Designation of Record | | |
| 2/02/1995 | Notice of Appeal Filed | | |
| 2/21/1995 | Extension of Time for Docketing Stm | Granted | 2/24/1995 |
| | Appellant granted to 3-23-95 to file docketing statement | | |
| 3/23/1995 | Extension of Time for Docketing Stm | Granted | 3/24/1995 |
| | Granted that Docketing Statement is due on 4-22-95. | | |
| | 30-Day Extension | | |
| 3/27/1995 | Docketing Statement Filed | | |
| 3/31/1995 | Clerk's Note | | |
| | Per phone call with Bunny Neuenschwander that the | | |
| | transcripts have been filed. Notice to be filed. | | |
| 4/04/1995 | Notice of Transcript Filed in T.C. | | |
| | Bunny Neuenschwander indicates that the transcripts were | | |
| | filed with the district court March 23, 1995. | | |
| 5/15/1995 | Record Filed | | |
| | 1 vol. pleadings; 13 vols. transcripts; 2 envs. of exhibits. | | |
| | Appellant's Brief is due June 26, 1995.   (North Vault) | | |
| 6/26/1995 | Extension of Time for Appellant Brf | Granted | 6/27/1995 |
| | Granted that Appellant's brief is due on 8-25-95. | | |
| 6/27/1995 | Appearance of Counsel | | |
| | Robert K. Heineman appears as co-counsel for appellant | | |
| 8/23/1995 | Motion-Appellant-Summary Dispositn | Granted | 9/21/1995 |
| | (En banc hearing 9-8-95) | | |
| 8/23/1995 | Memorandum of Points & Authorities | | |
| | In support of motion for summary reversal; motion to suspend | | |
| | time limit for filing motion for summary reversal; motion | | |
| | for stay pending determination | | |
| 8/31/1995 | Calendared for Law & Motion | | |
| | Set for 09/08/1995 at 10:30 | | |
| | En banc hearing:Motion for summary disposition | | |
| 9/06/1995 | Response to Motion for Summary Disp | | |
| 9/08/1995 | Misc. Letter | | |
| | Letter from Robert Heineman explaining need of the | | |
| | transcript | | |
| 9/13/1995 | Supplemental Record Index Filed | | |
| 9/21/1995 | Motion-Appellant-Summ Disp Granted | | |
| | Because significant portions of the transcript are missing | | |

Utah Supreme Court

2/05/1997                                                              Page    2
                    Docket Event Listing (Internal)

ocket No: 950057     Docket Date:  2/02/1995
  Date          Action                                Disposition  Disp. Date
                due to technical problems experienced, by the court,
                on motion of the defendant, vacates the conviction and
                remands the matter for retrial.
9/25/1995    Remitted
             Remitted to Third District Court Salt Lake County.
             14 volumes, 2 envs.
1/30/1995    Miscellaneous
             letter to C.J. Zimmerman from Mr. Rudolph. We have requested
             a response from counsel.
2/21/1995    Miscellaneous
             Letter from Mr. Rudolph with exhibits.
9/05/1996    Miscellaneous
             Letter from Mr. Rudolph.

*11*

*32*

JOAN C. WATT, #3967
Attorney for Defendant/Appellant
SALT LAKE LEGAL DEFENDER ASSOCIATION
424 East 500 South, Suite 300
Salt Lake City, Utah  84111
Telephone:  532-5444


IN THE SUPREME COURT OF THE STATE OF UTAH

| | | |
|---|---|---|
| THE STATE OF UTAH, | : | MOTION, STIPULATION AND ORDER TO SUPPLEMENT THE |
| Plaintiff/Appellee, | : | RECORD |
| v. | : | |
| HENRY LEE RUDOLPH, | : | Case No. 960482 |
| Defendant/Appellant. | : | Priority No. 2 |

COMES NOW Defendant/Appellant, HENRY LEE RUDOLPH, by and through counsel of record, JOAN C. WATT, and moves this Court pursuant to Rule 11(h), Utah Rules of Appellate Procedure to correct the record in this case by supplementing the record with the enclosed volume containing the transcripts of the following dates:  September 9, 1994; September 19, 1994; October 14, 1994; October 19, 1994; October 28, 1994; November 18, 1994; November 22, 1994; November 28, 1994; November 29, 1994; November 30, 1994; December 1, 1994; and January 13, 1995.

This volume of transcripts contains the transcripts which were prepared following the first trial and were contained in the official record following that trial.  The conviction obtained in the first trial was summarily reversed by this Court because the entire transcript of the trial was not prepared.  The transcripts in this volume, however, were prepared and were part of the

official record. The District Court has since <u>misplaced</u> the transcripts and has requested that Appellant correct the record by including this copy of the official transcripts.

DATED this 7th day of April, 1997.

_____
JOAN C. WATT
Attorney for Defendant/Appellant


<u>STIPULATION</u>

I, BARNARD N. MADSEN, have read the foregoing motion and stipulate to the supplementation of the record described therein.

DATED this _____ of April, 1997.


_____
BARNARD N. MADSEN
Assistant Attorney General

2

<u>ORDER</u>

Based upon motion and stipulation of counsel,

IT IS HEREBY ORDERED that the enclosed volume containing transcripts of hearings from September 9, 1994 through January 13, 1995 be included in the record of this case.

DATED this _____ day of April, 1997.

BY THE COURT:

_____
SUPREME COURT JUSTICE

3

## CERTIFICATE OF DELIVERY

I, JOAN C. WATT, hereby certify that I have caused to be delivered a copy of the foregoing to the Utah Attorney General's Office, Heber M. Wells Building, 160 East 300 South, Sixth Floor, P. O. Box 140854, Salt Lake City, Utah 84114-0854, this 7th day of April, 1997.

_Joan C. Watt_
_____
JOAN C. WATT

DELIVERED this _____ day of April, 1997.

_____

4

5

Utah Supreme Court

11/02/1998

Docket Event Listing

State v. Rudolph

Docket No: 960482   Docket Date: 11/13/1996
App. Type: Criminal Appeal
   Agency: 3rd District Court, Salt Lake        Case: 941901206
   Status: Dismissal Pending
    Staff:
BUSINESS State of Utah - Appellee
    JAN GRAHAM ( OFFICE OF ATTORNEY GENERAL )
    LAURA DUPAIX ( ASSISTANT ATTORNEY GENERAL )
Henry Lee Rudolph - Appellant
    KAREN STAM ( SALT LAKE LEGAL DEFENDER ASSOCIATION )
    JOAN C. WATT ( SALT LAKE LEGAL DEFENDER ASSOCIATION )
    KRISTINE M. ROGERS ( SALT LAKE LEGAL DEFENDER ASSOCIATION )
    SHARON L. PRESTON ( ATTORNEY AT LAW )

-------------------------------------------------------------------
01 11/08/1996   Designation of Record

-------------------------------------------------------------------
02 11/08/1996   Transcript Request Received
Hearings: 10-6-95:10-20-95:11-17-95:1-5-96: 2-20-96:4-2-96:
4-19-96:5-24-96:9-27-96.  Brad Young is the reporter.

-------------------------------------------------------------------
03 11/08/1996   Notice of Appeal Filed

-------------------------------------------------------------------
04 11/08/1996   Appearance of Counsel
Joan C. Watt, Karen Stam and Kristine M. Rogers appear
as co-counsel for appellant.

-------------------------------------------------------------------
05 11/08/1996   Courtesy Copy
Affidavit of Impecuniosity Filed.

-------------------------------------------------------------------
06 11/14/1996   Docketing Statement Filed

-------------------------------------------------------------------
07 11/14/1996   Extension of Time for TranscriGranted   11/12/1996 DMJ
Granted 30 days to January 4, 1997 to Brad Young to file the
transcripts.

-------------------------------------------------------------------
08 01/13/1997   Notice of Transcript Filed in
Brad Young indicates that the transcripts were placed on
file with the district court Jan. 6, 1997.

-------------------------------------------------------------------
09 01/16/1997   Misc. Letter
From Legal Defenders to Bunny Neuenschwander requesting she
find out who reported the October 6,1995 hearing.

-------------------------------------------------------------------
10 01/28/1997   Miscellanous Memorandum
Ex-parte pro se submission of fraudulent documents

-------------------------------------------------------------------
11 02/26/1997   Called for Record
Sent letter.

-------------------------------------------------------------------
12 03/14/1997   Notice of Transcript Filed in

Eileen Ambrose indicates that the transcripts were placed
on file with the district court March 24, 1997.
---------------------------------------------------------------
13 04/07/1997   Motion-Supplement Record      Granted   04/08/1997 RCH


1 vol. transcript. This is a composite volume which
replaces transcripts which were lost from the record.
---------------------------------------------------------------
14 04/08/1997   Motion Supplement Record Granted               RCH
It is ordered that the enclosed volume containing
transcripts of hearings from Sept. 9, 1994 through Jan 13,
1995 be included in the record of this case.
---------------------------------------------------------------
15 04/08/1997   Record Sent to T.Ct. (per requ
1 vol. replacement transcript sent to DC for pagination
---------------------------------------------------------------
16 04/09/1997   Transcript Request Received
Hearing held February 9, 1996.
Request was directed to Bunny Neuenschwander.
---------------------------------------------------------------
17 04/10/1997   Misc. Letter
letter from Mr. Rudolph.
---------------------------------------------------------------
18 04/21/1997   Notice of Transcript Filed in
Indicated by the filing of the transcripts with the record.
---------------------------------------------------------------
19 04/21/1997   Record Filed
3 vols. pleadings: 16 vols. (12 transcripts bound together).
---------------------------------------------------------------
20 04/22/1997   Set Briefing Schedule
Appellant's brief is due June 2, 1997.
---------------------------------------------------------------
21 04/24/1997   Clerk's Note
*Record Checked out by LDA, Joan Watt.
---------------------------------------------------------------
22 05/12/1997   Misc. Letter
From court reporter indication that the hearing held on
February 6, 1996 was continued and there's no transcript.
---------------------------------------------------------------
23 05/22/1997   Extension of Time for AppellanStipulatio
Stipulation that appellant's brief is due July 2, 1997.
---------------------------------------------------------------
24 06/20/1997   Supplement to Brief
Copies sent by Joan Watt of an argument prepared by Henry
Rudolph to supplement the opening brief.
---------------------------------------------------------------
25 06/20/1997   Appellant's Brief Filed


---------------------------------------------------------------
26 06/20/1997   Clerk's Note
*Record returned by LDA this date.
---------------------------------------------------------------
27 06/26/1997   Misc. Letter
Letter from Laura Dupaix stateing that Attorney Generals
Office needs Record.
---------------------------------------------------------------
28 06/30/1997   Appearance of Counsel
Laura Dupaix appears as counsel for State of Utah.
---------------------------------------------------------------
29 07/03/1997   Extension of Time for AppelleeStipulatio

```
Stipulation that appellee may have up to and including
August 19, 1997 to file their brief.
-----------------------------------------------------------------

30 08/14/1997   Extension of Time for AppelleeGranted   08/18/1997 PHB
Granted that appellee may have up to and including
September 18, 1997 to file their brief.   (30 days)
-----------------------------------------------------------------

31 09/10/1997   Extension of Time for AppelleeGranted   10/03/1997 LHR
Granted 15 days to October 3, 1997 to file brief.
-----------------------------------------------------------------

32 09/10/1997   Attorney Called
Laura Dupaix phoned asking where the state's exhibits are;
they are not with the record.
-----------------------------------------------------------------

33 09/12/1997   Supplemental Record Filed
2 envelopes of exhibits.
-----------------------------------------------------------------

34 09/29/1997   Misc. Letter
Letter from AG, Laura Dupaix, to check out record.
-----------------------------------------------------------------

35 10/01/1997   Motion-Accept Overlength BriefDenied   10/01/1997
Appellee request permission to file a brief of no more
than 60 pages.
-----------------------------------------------------------------

36 10/01/1997   Motion-Accept Ovrlngth Brief D                  MDZ

-----------------------------------------------------------------

37 10/03/1997   Appellee's Brief Filed

-----------------------------------------------------------------

38 10/22/1997   Calendared
Set for 12/01/1997 at 13:30
-----------------------------------------------------------------

39 10/24/1997   Extension of Time for Reply Br
Stipulation that appellant may have up to and including
November 17, 1997 to file reply brief (15 days)
-----------------------------------------------------------------

40 10/24/1997   Miscellaneous
Joan Watt authorizes representative to check out record on
her behalf.
-----------------------------------------------------------------

41 11/14/1997   Appellant's Reply Brief Filed
Pro se brief
-----------------------------------------------------------------

42 12/01/1997   Submitted on Oral Argument

-----------------------------------------------------------------

43 02/24/1998   Misc. Letter
From Mr. Rudolph requesting docket print outs for 970110 and
960482.  Sent print outs this day.
-----------------------------------------------------------------

44 07/31/1998   Opinion Filed
Howe, C. J.   Affirmed
-----------------------------------------------------------------

45 08/10/1998   Extension of Time for Rehearin
Motion Stipulation and Order for Extension of time to file Petition for
Rehearing
-----------------------------------------------------------------

46 08/11/1998   Extension Granted                                PHB
```

It is hereby ordered that an extension of time be given to Petitioner for
preparation of a petition for rehearing up to and including September 3, 1998.

---

47 09/03/1998   Appearance of Counsel
Appearance of Co-counsel of Sharon L. Preston, co-counsel with Joan C. Watt.

---

48 09/03/1998   Brief Lodged
Petition for Rehearing filed by LDA needs attorney signature on certificate of service

---

49 09/03/1998   Petition for Rehearing                Denied       10/29/1998  RCH
Filed by Henry Lee Rudolph, pro se.
9-4-98 Petition filed by Joan Watt and Sharon Preston on behalf of appellant.

---

50 10/29/1998   Petition for Rehearing Denied                               RCH

---

51 12/31/2099   Post Rehear Pet. - Remittitur Due            11/03/1998

==================================================================

Prepared By _____    Phone _____    Date _____

43 P.3d 467
43 P.3d 467, 439 Utah Adv. Rep. 8, 2002 UT 7
(Cite as: 43 P.3d 467, 2002 UT 7)
H

Page 1

Supreme Court of Utah.

Henry L. RUDOLPH, Plaintiff and Appellant,
v.
Hank GALETKA, Warden, Utah State Prison,
Defendant and Appellee.

No. 20000218.

Jan. 18, 2002.

After convictions for aggravated burglary and violation of a protective order were affirmed on direct appeal, 970 P.2d 1221, petitioner sought postconviction relief. The Third District Court, Salt Lake County, Pat B. Brian, J., denied petition. Petitioner appealed. The Supreme Court held that: (1) petitioner waived claim that counsel was ineffective in failing to contend that petitioner was deprived of his right to self-representation, and (2) counsel was not ineffective by failing to challenge burglary statute on vagueness grounds.

Affirmed.

West Headnotes

[1] Criminal Law ⚖1158(1)
110k1158(1)
Supreme Court reviews an appeal from an order dismissing or denying a petition for postconviction relief for correctness without deference to the lower court's conclusions of law.

[2] Criminal Law ⚖1429(2)
110k1429(2)
A petition for postconviction relief is a collateral attack on a conviction and sentence and is not a substitute for direct appellate review.

[3] Criminal Law ⚖1427
110k1427
Any issues that were not addressed on direct appeal but could have been raised may not be raised for the first time in a post-conviction relief proceeding absent unusual circumstances, and the rule applies to all claims, including constitutional questions.

[4] Criminal Law ⚖1429(1)
110k1429(1)
Postconviction relief petitioner was procedurally barred from contending that burglary statute was unconstitutionally vague and that he was denied the right of self-representation, as the issues were raised for the first time in the petition and he did not demonstrate an obvious injustice or a substantial and

prejudicial denial of a constitutional right. U.C.A.1953, 76-6-202(1).

[5] Criminal Law ⚖1440(3)
110k1440(3)
Under the Post-Conviction Relief Act, a petitioner may raise the issues he failed to raise on direct appeal through an allegation of ineffective assistance of counsel at trial and on appeal if he was represented by the same counsel during both phases of the criminal proceedings, as it is unreasonable in such circumstances to expect counsel to raise on direct appeal the issue of his own ineffectiveness at trial. U.S.C.A. Const.Amend. 6; U.C.A.1953, 76-6-202(1).

[6] Criminal Law ⚖1137(8)
110k1137(8)
Burglary defendant, by requesting court-appointed counsel, waived right to claim that counsel was ineffective when she did not raise, either at trial or on appeal, contention that defendant was deprived of his right to self-representation, as defendant's request for counsel went beyond mere acquiescence and simple cooperation. U.S.C.A. Const.Amend. 6 ; U.C.A.1953, 76-6-202(1).

[7] Criminal Law ⚖1430
110k1430
Postconviction relief petitioner waived claim that counsel was ineffective by failing to challenge burglary statute on vagueness grounds; since petitioner filed his own briefs on direct appeal, he could and should have raised the issue himself at that time. U.S.C.A. Const.Amend. 6; U.C.A.1953, 76-6- 202(1).

[8] Criminal Law ⚖641.13(2.1)
110k641.13(2.1)
Counsel's failure to challenge burglary statute on vagueness grounds did not amount to ineffective assistance, as her opposition to the jury instructions achieved the same result. U.S.C.A. Const.Amend. 6; U.C.A.1953, 76-6- 202(1).

[9] Criminal Law ⚖641.13(1)
110k641.13(1)
To establish a claim for ineffective assistance, a defendant must demonstrate: (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's ineffective assistance. U.S.C.A. Const.Amend. 6.

[10] Constitutional Law ⚖48(1)
92k48(1)
Supreme Court endows legislative enactments with a strong presumption of validity and does not declare

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

43 P.3d 467
(Cite as: 43 P.3d 467, 2002 UT 7)

Page 2

them unconstitutional unless there is no real basis upon which they can be construed as conforming to constitutional requirements.

*468 Sharon L. Preston, Salt Lake City, for plaintiff.

PER CURIAM.

**1 Plaintiff Henry L. Rudolph appeals from the denial of his petition for post-conviction relief. We take jurisdiction over the appeal under sections 78-2-2(3)(j) and 78-2a-3(2)(f) of the Utah Code.

**2 The State initially charged Rudolph with aggravated burglary, aggravated sexual assault, and violation of a protective order. His first trial, at which he appeared pro se with stand-by counsel, ended with convictions of aggravated burglary and violation of a protective order but acquittal of aggravated sexual assault. After Rudolph appealed, this court summarily reversed and remanded the case for a new trial because a malfunction in the recording equipment had destroyed the trial court record. Rudolph again represented himself at his second trial, which ended in a mistrial. After a third trial, at which he was represented by court-appointed counsel, Rudolph was again convicted of aggravated burglary and violation of a protective order. He appealed, and this court affirmed his convictions. State v. Rudolph, 970 P.2d 1221 (Utah 1998).

**3 In this appeal from the denial of a subsequent petition for post-conviction relief, Rudolph raises four issues not previously raised on direct appeal: (1) Though not asserted at trial or on direct appeal, the issues he now raises warrant review because of unusual circumstances; (2) Utah's burglary statute, as interpreted by this court on direct appeal and as applied to Rudolph, is unconstitutionally vague because it fails to sufficiently identify or define a forbidden act; (3) Rudolph was denied the right to represent himself in violation of the Sixth Amendment of the U.S. Constitution; and (4) Rudolph was deprived of effective assistance of counsel at trial and on direct appeal.

STANDARD OF REVIEW

[1] **4 We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law. Julian v. State, 966 P.2d 249, 252 (Utah 1998).

ANALYSIS

[2][3] **5 A petition for post-conviction relief is a collateral attack on a conviction and sentence and is not a substitute for direct appellate review. Carter v. Galetka, 2001 UT 96, ¶ 6, 44 P.3d 626. Any issues that were not addressed on direct appeal but could have been raised may not be raised for the first time in a post-conviction relief proceeding absent unusual circumstances. This rule applies to all claims, including constitutional questions. Julian, 966 P.2d at 258.

[4] **6 Rudolph does not articulate any unusual circumstances other than noting that the errors committed below were obvious and involved the denial of substantial constitutional rights. His constitutional claims with respect to section 76-6-202(1), Utah's burglary statute, and self-representation are therefore procedurally barred, because he has not demonstrated an obvious injustice or a substantial and prejudicial denial of a constitutional right. Carter, 2001 UT 96 at ¶ 15 (citing Hurst v. Cook, 777 P.2d 1029, 1035 (Utah 1989)).

[5] **7 However, under Utah's Post-Conviction Relief Act, a petitioner may raise the issues he failed to raise on direct appeal through an allegation of ineffective assistance of counsel at trial and on appeal if he was represented by the same counsel during both phases of the criminal proceedings. Utah Code Ann. § 78-35a-104(1)(d) (1996). "When trial counsel represents [a] defendant on appeal an ineffective assistance claim cannot be raised because it is unreasonable to *469 expect [trial counsel] to raise the issue of [her] own ineffectiveness at trial on direct appeal." State v. Labrum, 881 P.2d 900, 907 (Utah Ct.App.1994) (internal quotations omitted); Pascual v. Carver, 876 P.2d 364, 366 n. 1 (Utah 1994); Parsons v. Barnes, 871 P.2d 516, 521 (Utah 1994). Given that this is the case here, we therefore reach the issue whether Rudolph's counsel was ineffective when she failed both at trial and on appeal to challenge Rudolph's right to represent himself at trial and to challenge the Utah burglary statute on vagueness grounds.

[6] **8 With respect to the first issue, Rudolph has not provided this court with any evidence or transcripts from his third trial that would demonstrate his continued wish to represent himself:

When a defendant predicates error to this court,

43 P.3d 467                                                                Page 3
(Cite as: 43 P.3d 467, *469, 2002 UT 7, **8)

*2- mans lttr*
*Ind landlord compts*

he has the duty and responsibility of supporting such allegation by an adequate record. Absent that record, defendant's assignment of error stands as a unilateral allegation which the review court has no power to determine. This court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record.

*State v. Wulffenstein*, 657 P.2d 289, 293, *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1982); *see also* Utah R.App. P. 11(e)(2).

[FN1] The lower court concluded that appointed counsel represented Rudolph at trial without his protest, that he requested continued representation by the Legal Defenders' office during sentencing, and that he permitted the lawyer to represent him on appeal, even though he also filed pro se briefs which this court considered in affirming the conviction. *Rudolph*, 970 P.2d at 1225. Absent evidence to the contrary, we agree with the lower court that Rudolph's request for court-appointed counsel went beyond mere acquiescence and simple cooperation. He has therefore waived his right to claim that counsel was ineffective when she did not raise his right to self-representation under the Sixth Amendment of the U.S. Constitution. *Maraano v. U.S.*

*U.S. v. Gederian*

*Jcurs intn to suppered granted*

FN1. (2) *Transcript required of all evidence regarding challenged finding or conclusion.* If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. Neither the court nor the appellee is obligated to correct appellant's deficiencies in providing the relevant portions of the transcript.

[7] **9 With respect to the second issue, we conclude that the claim of ineffective assistance of counsel in failing to challenge the Utah burglary statute on vagueness grounds has also been waived. Rudolph could and should have raised that issue himself because he filed his own briefs on direct appeal. *Rudolph*, 970 P.2d at 1225. *did*

[8][9][10] **10 Even were we to reach the issue of ineffective assistance of counsel, Rudolph would still have to demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that her ineffective assistance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rudolph has failed to establish substandard performance under the first prong of the *Strickland* test. Rudolph's counsel challenged the elements of the burglary statute only through claims of erroneous jury instructions. She may well have made the tactical decision not to pursue a constitutional challenge to the burglary statute because this court endows legislative enactments with a strong presumption of validity and does not declare them unconstitutional unless there is no real basis upon which they can be construed as conforming to constitutional requirements. *State v. DeBooy*, 2000 UT 32, ¶ 28, 996 P.2d 546 (citing cases); *see also State v. Krueger*, 1999 UT App 54, ¶ 21, 975 P.2d 489. Counsel's challenge to the jury instructions achieved the same result, and that trial strategy did not fall below an objective standard of reasonableness.

*← Huggards too long*

*Ex Post facto law 4/30/96*

**11 Having found no substandard performance on behalf of counsel, we need not reach the second prong of the *Strickland* test. *exposed!*

CONCLUSION

**12 We hold that Rudolph's request for court-appointed counsel continued through *470 his appeal as of right, and thus counsel was not ineffective in not raising the issue of self-representation. Likewise, counsel was not ineffective when she did not challenge the burglary statute on vagueness grounds. The denial of the petition for post-conviction relief is affirmed.

43 P.3d 467, 439 Utah Adv. Rep. 8, 2002 UT 7

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# CERTIFIED COPY

7

IN THE THIRD JUDICIAL DISTRICT COURT FOR SALT LAKE COUNTY

STATE OF UTAH

\* \* \*

| | |
|---|---|
| STATE OF UTAH, | ) |
| Plaintiff, | ) Civil No. 941901206 |
| | ) Judge Timothy Hanson |
| vs. | ) |
| | ) Motion Hearing |
| HENRY LEE RUDOLPH, | ) |
| Defendant. | ) |

November 22, 1994

APPEARANCES:

For the State:      Charles D. Behrens, Esq.

For the Defendant:  Henry Lee Rudolph, Pro Se

David L. Sanders, Esq.



Associated Professional Reporters
10 West Broadway / Suite 200 / Salt Lake City, Utah 84101
Phone (801) 322-3441 / FAX (801) 322-3443

382
#+381

9

1              THE COURT:  Mr. Rudolph, everything the state is
2    going to do in this trial starting Monday is going to be
3    prejudicial to you.  That's what it's supposed to be.
4    They're trying to prove that you committed this crime.
5              MR. RUDOLPH:  With falsified evidence.
6              THE COURT:  If it's falsified.
7              MR. RUDOLPH:  I can prove it.
8              THE COURT:  Then I suppose at that point in time
9    we'll look at it.  At this point in time I'm not convinced
10   there's any false evidence merely based upon your
11   accusations.  Why should I believe you?
12             MR. RUDOLPH:  Would you like to see the
13   pictures, Your Honor?
14             THE COURT:  Hand the pictures to your lawyer.
15   What did you say, Mr. Rudolph?
16             MR. RUDOLPH:  Nothing, Your Distinguished Honor.
17             THE COURT:  Be careful, Mr. Rudolph.  Be very
18   careful.
19             MR. RUDOLPH:  I know being a black man I have
20   to, but I've been in a form of prison all my life and now I see it
21   happening again.  Now, I can show you very simply.  You see
22   that pen there?  That pen is there to indicate the size of
23   the blade.  The cup is there to indicate the size of the
24   handle.  Now, right here, look at this cup.  That cup right
25   there is tipped over.  If you look right there, there is the

DAVID E. YOCOM
Salt Lake County Attorney
CHARLES D. BEHRENS, Bar No. 5176
Deputy County Attorney
231 East 400 South, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 363-7900

*Evelyn Thompson*

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT

## IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | | |
|---|---|---|
| THE STATE OF UTAH, | ) | |
| Plaintiff, | ) | ORDER OF CONTINUANCE |
| | ) | |
| -vs- | ) | Case No. 941901206 |
| HENRY L. RUDOLPH, | ) | Hon. Timothy R. Hanson |
| Defendant. | | |

The States Motion to Continue comes before the Court this 28th day of October, 1994. The State is represented by Deputy County Attorney, Charles D. Behrens. The defendant represents himself as previously ordered by this court.

The State has indicated in its motion and in court that an essential witness, Det. Alex Huggard, in is case against the defendant is unavailable for trial. The defendant opposes any continuance of the trial date and further states that he wants to confront Det. Huggard in court as he has evidence that Det. Huggard has "tampered with" evidence which may be presented against him.

Based upon the forgoing Motion to Continue and being fully advised concerning the issue the court finds that the defendant will suffer some slight prejudice by a short continuance of the trial date but that the defendant has a right to confront the witness against him which he has expressed a desire to do. The State also has a right to adequately present its case to the finder of fact.

00058

IT IS HEREBY ORDERED that the JURY TRIAL in the above-entitled matter is continued from 14th day of November, 1994, at 10:00 AM to the 28th day of November, 1994, at 10:00 AM.

DATED this _____31_____ day of October, 1994.

BY THE COURT:

TIMOTHY R. HANSON
DISTRICT COURT JUDGE

00059

CERTIFICATE OF DELIVERY

I hereby certify that a true and correct copy of the foregoing ORDER OF CONTINUANCE was delivered to Henry L. Rudolph, Attorney for Defendant Henry L. Rudolph at Salt Lake County Jail, 437 So. 200 East, Salt Lake City, Utah 84111, Salt Lake City, Utah 84111 on the _____ day of October, 1994.

_____

5

1        THE COURT:  And substitute 21, a new 21 for that
2   that includes the second page.  I don't know if it's numbered
3   two, but at least it's the second page that is an accurate
4   transcript of the tape that we're going to play this morning,
5   and that new 21 will be received and you can arrange that
6   with the court.
7        MR. BEHRENS:  We'll take care of that, Your
8   Honor.
9        THE COURT:  But for the record just have her X
10  this out and keep it, it won't go to the jury.  I just want
11  it kept there so if somebody looks at it.
12        MR. BEHRENS:  Put a new sticker or a different
13  one.
14        THE COURT:  Yeah.
15        MR. BEHRENS:  Another matter while we've got the
16  record.  During Mr. Rudolph's cross-examination of Officer
17  Unander he was talking to him about the location of the knife
18  and what was in the report and what was not in the report.
19  Detective Huggard brought to my attention that there is what
20  they call an evidence tag I believe that is with the knife
21  right now, wherever it's locked up, and he gave me a copy of
22  that and I've got a copy from Mr. Rudolph outside.  I hadn't
23  seen it before.  It's just a piece of discovery I wanted to
24  make him aware of while we've got the record.
25        THE COURT:  It doesn't make any difference, the

6

1  knife's the knife.  Mr. Rudolph, do you have some matters

2  this morning?

3          MR. RUDOLPH:  I'd like to ask a question to Mr.

4  Behrens, if he has blown up that picture right there?  It's

5  an exhibit that I have listed.

6          MR. BEHRENS:  No, I didn't blow this one up.

7          MR. RUDOLPH:  You didn't blow that one up.  Your

8  Honor, I know this is not the right place to present this

9  case, but I'm compelled to say something at this point in

10  time to address the issue of innocence.  Now, you know that

11  I've made allegations that there was some tampering with

12  evidence.

13          THE COURT:  I know you've made that allegation.

14          MR. RUDOLPH:  Just for the court's record,

15  because you know that I've been incarcerated this whole time

16  and I haven't had an opportunity to tamper with anything or

17  do anything with anything whatsoever, but I want all of you

18  to just look at this right here real quick, and I think

19  obviously it will be made apparent, and after that I'd like

20  to entertain a motion also.

21          THE COURT:  I won't entertain a motion right

22  now.

23          MR. RUDOLPH:  Well, anyway, if you look at that

24  you see that cup's tipped over and you see that knife.  Now,

25  the cup is tipped over.  Now, I'm just speculating, giving a

51

1       Q       Okay.  Now what's that a picture of?

2       A       This is a picture of Mrs. Oates.

3       Q       And it's a picture of her neck, the

4  strangulation mark or the hickies?

5       A       Probably a little of both, sir.

6       Q       Little of both, I like that.  Is that a fair and

7  accurate depiction I guess?

8       A       Yes, sir.

9       Q       Have the jury look at that.  Now, and this is

10  where, if I may -- how can I phrase this?  Would you be

11  surprised if I said to you that I accused you wrongly and I

12  am very sorry?

13      A       I would accept your apology and thank you, sir.

14      Q       And if I can explain why I will say --

15              MR. BEHRENS:  Object.  This isn't a question.

16              THE COURT:  Sustained.

17      Q       (By Mr. Rudolph)  Would you have any reason to

18  know why I would be thankful to you based on your report?

19              MR. BEHRENS:  I'm sorry, I don't understand the

20  question.  It's nonsensical.

21              THE COURT:  Agreed, sustained.

22      Q       (By Mr. Rudolph)  In your report did you say you

23  found and took some evidence, some sheets from the bedroom?

24  On page 11.

25      A       I said that there were some sheets that were

52

1  taken into evidence.

2       Q    From the bedroom.  You can read it, and would

3  you read that, "The sheets --"

4       A    It says "The sheets from the bed were taken and

5  placed into evidence, as well --"

6       Q    And continue.

7       A    "As well as a knife that was later to be found

8  on the kitchen counter."

9       Q    Yes.

10      A    "And was placed into evidence by Officer

11  Unander."

12      Q    Thank you.  Does that explain why I am thankful

13  to you?

14           MR. BEHRENS:  Objection, again nonsensical.

15           THE COURT:  It doesn't make any difference

16  whether you're thankful or not.

17      Q    (By Mr. Rudolph)  Yesterday didn't Officer

18  Unander and Officer Clawson, I believe --

19      A    Yes, sir.

20      Q    Didn't they both testify under oath that they

21  picked up that knife right here, the one that I'm showing

22  you, Exhibit 13, in the bedroom?

23      A    Yes, sir, they did.

24      Q    And that's dramatically different from what you

25  just said, isn't it?

53

1    A      I believe I was mistaken in my report.

2    Q      I don't think so, but irrespective of that --

3           MR. BEHRENS:  Objection.

4           THE COURT:  That statement is stricken.

5           MR. RUDOLPH:  I strike that and withdraw that.

6           THE COURT:  You don't have to, I've already

7    stricken it.

8           MR. RUDOLPH:  I'd like the jury to look at that

9    picture, if I may.  Can I stand by him so we can describe

10   this together, Your Honor, he and I?

11          THE COURT:  Proceed, and if I have a problem

12   with it I'll tell you.

13   Q      (By Mr. Rudolph)  That's a big knife, isn't it?

14   A      Considerably large knife, yes, sir.

15   Q      And that Hogle Zoo cup is tipped over, isn't it?

16   A      Yes, sir, it is.

17   Q      And based on that, when you view that picture

18   you get kind of an illustrative of or indication of the size

19   of handle, right, based on the size of the cup?

20   A      There is also a pen in the photo.

21   Q      That's exactly what I want to get to.  Thank

22   you.  Just one thing at a time, please.  Now, the pen is

23   placed there.  That's obviously illustrative of the side of

24   the blade; isn't that true?

25          A      The measurement of the entire knife, sir.

54

1     Q      Pardon me?

2     A      Or a measurement of the entire knife.

3     Q      Because that's not drawn to scale, so you'd have

4  to use devices like that while you're improvising in the

5  course of photographing a crime; is that correct?

6     A      That is true.

7     Q      And that is a Hogle Zoo cup, isn't it?

8     A      Yes, sir.

9     Q      Boy, that's a big knife.  It would be relatively

10  hard to juggle something like that in your pants, wouldn't

11  it?

12            MR. BEHRENS:  Objection.  He's not qualified to

13  testify.

14            THE COURT:  Sustained.

15     Q      (By Mr. Rudolph)  There you go exactly, perfect.

16  Would you look at that picture, please.

17     A      I'm looking at Exhibit K-K.

18     Q      Exactly.  What do you see in that picture?

19     A      This is a picture of the kitchen area.

20     Q      And let me stand here by you, if I may.  Do you

21  see a Hogle Zoo cup on that counter?

22     A      There is a plastic cup.  I couldn't read Hogle

23  Zoo on it.

24     Q      Look at it for a long time.  Let me give you

25  another picture.  This is the same picture they are looking

55

1    at.  Let me give you another one so you can look at it at the

2    same time.

3         A    The cups are similar, but I still couldn't say

4    for certain that it is a Hogle Zoo cup.

5         Q    Now, this is a picture of --

6         A    That was in two that I was looking at,

7    exhibit --

8              MR. BEHRENS:  I'm sorry to interrupt.  Have

9    these photographs been admitted?

10             MR. RUDOLPH:  Yes, they all have.

11             THE COURT:  You'll have to tell me which numbers

12   they are and we'll ask Ms. Thompson.  Mr. Rudolph, be quiet

13   for a moment.  Let's find out whether or not these

14   exhibits --

15             MR. BEHRENS:  Initially most of the photographs

16   we were using had already been admitted, but have we gotten

17   into some that have not?

18             MR. RUDOLPH:  Yes, one that he is looking at

19   right now.

20             THE WITNESS:  K-K.

21             MR. RUDOLPH:  Yes, K-K.

22             THE COURT:  Ms. Thompson, has K-K been admitted?

23             THE CLERK:  No, it hasn't.

24        Q    (By Mr. Rudolph)  Okay.  Now we're talking about

25   the cup, aren't we?

56

1      A      There is a cup in the photo.

2      Q      Okay.  Now, there is a picture that I'm showing

3 you now.  It's listed as Exhibit A, isn't it?

4      A      This is a photo of Exhibit A.

5      Q      It's a photo of a knife, isn't it?

6      A      It's a photo of a knife block and there appears

7 to be a knife in it, yes, sir.

8              MR. RUDOLPH:  Ask the jury to look at that.

9              MR. BEHRENS:  Has Exhibit A been admitted?

10             MR. RUDOLPH:  Yes.

11             THE CLERK:  Yes, it has.

12             THE COURT:  Mr. Rudolph, the clerk usually makes

13 that determination.

14             MR. RUDOLPH:  Yes, Your Honor, absolutely.

15             THE COURT:  Please restrain yourself from making

16 comment.  Has A been admitted, Evelyn?

17             THE CLERK:  It's A and it has been.

18             MR. BEHRENS:  I'd ask before we take any more

19 testimony from K-K can we admit that?  I'd have no objection

20 to it.

21             THE COURT:  It's received.

22      Q      (By Mr. Rudolph)  Now K-K is in.  Now we're

23 looking, we're drawing a comparison between this big picture

24 of this knife here.  Now I've just passed around a picture,

25 didn't I, of a butcher block and a knife in it, right?

57

1     A     Yes, sir, you did.

2     Q     Is that the knife that you in your report said

3 that you subsequently found after taking the sheets from the

4 bed and in the kitchen, you took the sheets from the bed and

5 you subsequently found a knife that was introduced into

6 evidence by Officer Unander on the kitchen counter?  Is that

7 what that says?

8     A     That's what it says, but --

9     MR. RUDOLPH:  That's enough.  Your Honor, I

10 don't want any speculation.

11     THE COURT:  Please answer the question.  Ask

12 your next question.

13     Q     (By Mr. Rudolph)  Okay.  Now, why if there was a

14 knife found on the counter didn't you take a picture of the

15 actual knife that was used at the location that it was used?

16 Is there any reason, or you're assuming that the knife in the

17 bedroom was the right knife?

18     MR. BEHRENS:  And I'm going to object because he

19 testified earlier that he was wrong in that the knife wasn't

20 found on the counter.

21     MR. RUDOLPH:  He was wrong.  Three questions,

22 Your Honor, and it will be all cleared up.

23     THE COURT:  What's your objection?

24     MR. BEHRENS:  My objection is that Detective

25 Huggard testified earlier that he believed he was wrong in

58

1    his report, and that the knife wasn't found in the kitchen as

2    is indicated in his report, and the question assumes the

3    knife was found there.

4                   THE COURT:  Well, I think Mr. Rudolph is

5    entitled to pursue it.  The jury understands what the witness

6    is testifying to.

7                   MR. RUDOLPH:  Let me rephrase it, Your Honor, if

8    I might.

9          Q     (By Mr. Rudolph)  You're a professional police

10   officer, right?

11         A     Yes, sir.

12         Q     And you know how to secure a crime scene?

13         A     Yes, sir.

14         Q     And you know how to keep from contaminating a

15   crime scene?

16         A     I do, sir.

17         Q     Now, I just asked you why your report was faulty

18   and you have a reason why it's different from your other

19   officers; isn't that true?

20         A     Yes, I believe I was wrong.

21         Q     Okay.  Isn't it also true that as a police

22   officer you stand behind your fellow officers?

23                 MR. BEHRENS:  Objection, that's argumentative.

24                 THE COURT:  Sustained.

25         Q     Have you ever heard the phrase CYA?

59

1          MR. BEHRENS:  Objection

2          THE COURT:  Sustained.

3          Q     (By Mr. Rudolph)  Now, if you look here, and I

4   want you to look with me close, isn't that a dramatically

5   similar cup to the one that's located in the bedroom?  I'm

6   not saying it's the same, saying it's similar to the tipped

7   over cup.

8          A     There is a plastic cup there.

9          Q     Now, this is the big catch.  Why did no one take

10  a picture of that knife that's laying across the counter from

11  that steak and macaroni?  You see that knife, don't you?

12  Now, look at it closely, scrutinize, meticulous attention to

13  detail.  Do you see a knife laying on that counter?

14         A     I do see a knife on the counter or something

15  that appears to be that.

16         Q     Look at it some more.  Isn't that the same type

17  of brown handle as all the different knives we've been

18  looking at?

19         A     It appears to be, yes, sir.

20         Q     Do you want to use my glasses?

21         A     No, sir.

22         MR. RUDOLPH:  Thank you, sir.  I would like the

23  jury -- what I'm doing is I am going to point out to the

24  first person here --

25         THE COURT:  Mr. Rudolph, you may not address the

## C E R T I F I C A T E

I, BRAD J. YOUNG, hereby certify that I attended and reported, as official court reporter, the proceedings in the above-entitled and numbered matter before the Honorable Pat B. Brian and that the foregoing is a true and correct transcription of my stenographic notes thereof.

Dated at Salt Lake City, Utah, this 14th day of Feb., 1997.

BRAD J. YOUNG
OFFICIAL COURT REPORTER

9

RECEIVED

JAN 1 7 1995

INTAKE UNIT
REGION 3

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

THE STATE OF UTAH,

Plaintiff,

vs.

HENRY LEE RUDOLPH

Defendant.

**JUDGMENT, SENTENCE**
**(COMMITMENT)**

| | |
|---|---|
| Case No. | 941901206 FS |
| Count No. | 1 |
| Honorable | TIMOTHY R. HANSON |
| Clerk | E. THOMPSON |
| Reporter | JACKIE MAIR |
| Bailiff | JACK WEISS |
| Date | JANUARY 13, 1994 |

☐ The motion of _____ to enter a judgment of conviction for the next lower category of offense and impose sentence accordingly is ☐ granted ☐ denied. There being no legal or other reason why sentence should not be imposed, and defendant having been convicted by ☒ a jury; ☐ the court; ☐ plea of guilty; ☐ plea of no contest; of the offense of __AGGRAVATED BURGLARY__ , a felony of the _1_ degree, ☐ a class _____ misdemeanor, being now present in court and ready for sentence and represented by __PRO SE/SANDERS__ the State being represented by __C. BEHRENS__ is now adjudged guilty of the above offense, is now sentenced to a term in the Utah State Prison:

☐ to a maximum mandatory term of _____ years and which may be for life;
☐ not to exceed five years;
☐ of not less than one year nor more than fifteen years;
☒ of not less than five years and which may be for life; THE COURT RECOMMENDS CREDIT FOR TIME
☐ not to exceed _____ years;  SERVED FROM 8/1/94
☐ and ordered to pay a fine in the amount of $_____;
☐ and ordered to pay restitution in the amount of $_____ to _____

☒ such sentence is to run concurrently with __COUNT #2__
☐ such sentence is to run consecutively with _____
☐ upon motion of ☐ State, ☐ Defense, ☐ Court, Count(s) _____ are hereby dismissed.
☐ _____
☐ Defendant is granted a stay of the above (☐ prison) sentence and placed on probation in the custody of this Court and under the supervision of the Chief Agent, Utah State Department of Adult Parole for the period of _____, pursuant to the attached conditions of probation.
☐ Defendant is remanded into the custody of the Sheriff of Salt Lake County ☐ for delivery to the Utah State Prison, Draper, Utah, or ☐ for delivery to the Salt Lake County Jail, where defendant shall be confined and imprisoned in accordance with this Judgment and Commitment.
☒ Commitment shall issue __FORTHWITH.__

DATED this __13__ day of __JANUARY__ 19 ___

APPROVED AS TO FORM:
COPIES TO COUNSEL

_____
Defense Counsel

DISTRICT COURT JUDGE
TIMOTHY R. HANSON

_____
Deputy County Attorney

Page _1_ of _2_

(White—Court)   (Green—Judge)   (Yellow—Jail/Prison/AP&P)   (Pink—Defense)   (Goldenrod—State)

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

FILED

CENTRAL DIVISION

21 JUL 99 PH 4: 53

DISTRICT OF UTAH

BY: _____

DEPUTY CLERK

| | | |
|---|---|---|
| HENRY L. RUDOLPH | ) | |
| | ) | Case No. 2:99-CV-371K |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| HANK GALETKA, | ) | |
| | ) | |
| Defendant. | ) | |

The petitioner, Henry L. Rudolph, an inmate at the Utah State Prison (USP) has filed a petition for habeas corpus under 28 U.S.C. § 2254 seeking review of his state conviction in Third District Court, State of Utah. He was convicted of aggravated burglary and violation of a protective order. The petition has been referred to the magistrate judge under 28 U.S.C. § 636 (b)(1)(B). The petition alleges that Rudolph's conviction was obtained in violation of twelve provisions of the federal Constitution or federal law. The case has been reviewed pursuant to Rule 4, <u>Rules Governing Section 2254 Cases</u>. This report and recommendation is submitted pursuant to the reference of petitioner's petition for habeas corpus.

<u>Background</u>

Rudolph is currently incarcerated in the USP in Draper, Utah. During his first trial in 1994, Rudolph was acquitted of sexual assault and convicted of aggravated burglary and violation of a protective order. In 1995, the Utah Supreme Court overturned the conviction and ordered a retrial on the ground that a malfunction in the court recording equipment destroyed the



trial court record.  Rudolph's second trial ended when the judge declared a mistrial because of

perjured testimony.  At Rudolph's third trial, in 1996, he was convicted of aggravated burglary

(entering with the intent to commit sexual assault) and violation of a protective order.  The Utah

Supreme Court affirmed his conviction on July 31, 1998.  See State v. Rudolph, 970 P.2d 1221

(Utah 1998).


## Discussion

Rudolph's petition for habeas corpus should be denied for failure to exhaust all state

remedies.  According to 28 U.S.C. § 2254 (b)(1)(A), the petitioner must first exhaust all state

remedies before filing a writ of habeas corpus in federal court.  See also Picard v. Conner, 404

U.S. 270 (1971).  The burden of proving that a claim has been exhausted lies with the petitioner.

See, e.g., Clonce v. Presley 640 F.2d 271 (10th cir. 1981).  Rudolph has not met his burden of

showing exhaustion for five allegations in his petition.  Rudolph's petition contains a mixture of

exhausted and unexhausted claims and therefore must be dismissed without prejudice.  Rose v.

Lundy, 455 U.S. 509 (1992. )

First, Allegation B alleges an unconstitutionally vague statute.  In appeal to the Utah

Supreme Court, Rudolph appealed incorrect statutory interpretation by the trial court of Utah's

burglary statute, Utah Code Ann. § 76-6-202(1), not unconstitutional vagueness.  Also,

Allegation G alleges violation of due process where the jury instructions were unconstitutionally

vague and failed to define critical terms, yet Rudolph's appeal to the Utah Supreme Court

concerned erroneous jury instructions, not vagueness.  These unconstitutionally vague allegations

fail the exhaustion standard because Rudolph never raised them on appeal.  The Utah Supreme

Court must have had a fair opportunity to consider Petitioner's federal claims. The petitioner "must present to the state court the same claim he urges upon the federal court, in order that it may be found he has exhausted his state remedies." Picard, 404 U.S. at 276. Rudolph did not present the same claim to the state court as he presents in his petition.

Third, Allegation H alleges conviction obtained in violation of constitutional right to a unanimous jury verdict of guilt. Rudolph makes no assertion that he ever appealed this allegation nor is it mentioned as an issue being appealed in the Utah Supreme Court opinion. See State v. Rudolph, 970 P.2d 1221 (Utah 1998). Recently, the Supreme Court has clarified that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review." O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999). By not appealing this issue to the Utah Supreme Court Rudolph has not invoked one complete round of Utah's appellate review. Therefore, Rudolph has not exhausted the claim in state court.

*IAC*

Fourth, Allegation I alleges the denial of the right to self-represent. Rudolph alleges that he appealed this issue to the Utah Supreme Court. However, the Utah Supreme Court's opinion does not list this as one of the issues on appeal. See Rudolph, 750 P.2d at 1225. Again, Rudolph has not exhausted the claim in state court.

*IAC*
*Z-mars Ht*

Fourth, Allegation L alleges ineffective assistance of council. Rudolph did not appeal this issue to the Utah Supreme Court, rather he included it in a Petition for Extraordinary Relief submitted to the Utah Supreme Court before his appeal to the Utah Supreme Court. A petition for Extraordinary Relief is available to a prisoner only "where no other plain, speedy, and adequate remedy is available" to determine if the prisoner is validly being held. Utah R. Civ. P.

*IA*

3

65B(a). A Petition for Extraordinary Relief must be filed in the district court. Therefore, the

Utah Supreme Court remanded the petition to the district court where it was denied as frivolous

and Rudolph never appealed the denial. A Petition for Extraordinary relief does not satisfy the

exhaustion requirement because the issues raised in it were never presented to the Utah Supreme

Court as is required by O'Sullivan v. Boerckel. See also Castille v. Peoples, 489 U.S. 346

(1989) (holding that state exhaustion is not met where the claim has been presented for the first

and only time in a discretionary appeal in which the appeals court will not consider the merits

"there are special and important reasons,"[similar to the "no other plain, speedy, and adequate

remedy" requirement for a Petition for Extraordinary Relief]). Because ineffective assistance of

council was never appealed to the Utah Supreme Court the issue is not exhausted and cannot be

brought in a petition for a writ of habeas corpus.

Recommendation.

Rudolph's petition contains a mixture of exhausted and unexhausted claims and therefore

must be dismissed. Rudolph should retain the choice of returning to state court to exhaust all his

claims or resubmitting the habeas corpus petition to present only the exhausted claims. Rose,

455 U.S. at 520. Rudolph has available remedies remaining in Utah. He may file another

Petition for Extraordinary Relief and appeal it to the Utah Supreme court if needed. See Utah R.

Civ. P. 65B(b).

Copies of the foregoing Report and Recommendation are being mailed to the parties who

are hereby notified of their right to object to the same. The parties are further notified that they

must file any objections to the Report and Recommendation, with the clerk of this court,

pursuant to 28 USC § 636 (b), within ten (10) days after receiving it. Failure to file objections

4

may constitute a waiver of those objections on subsequent appellate review.

**DATED** this _21st_ Day of July, 1999.

**BY THE COURT:**

_Ronald N. Boyce_
Ronald N. Boyce
United States Magistrate Judge

**CERTIFICATE OF MAILING**

A copy of the foregoing Report and Recommendation to the following persons on the _21st_

Day of July, 1999.


Henry L. Rudolph
P.O. Box 250
Draper, Utah 84021

mas

United States District Court
for the
District of Utah
July 22, 1999

\* \* MAILING CERTIFICATE OF CLERK \* \*

Re:  2:99-cv-00371

True and correct copies of the attached were mailed by the clerk to the
following:

Henry L. Rudolph
UTAH STATE PRISON
PO BOX 250
DRAPER, UT   84020

Criminal Appeals, Esq.
C/O ANGELA F MICKLOS
160 E 300 S SIXTH FLOOR
PO BOX 140854
SALT LAKE CITY, UT   84114-0854
JFAX 9,3660167

DEC - 8 1995

IN THE THIRD JUDICIAL DISTRICT COURT OF SALT LAKE COUNTY

STATE OF UTAH

\* \* \*

| | | |
|---|---|---|
| STATE OF UTAH, | : | NO BAIL ? |
| Plaintiff, | : | Case No. 941901206 |
| -vs- | : | Honorable Pat B. Brian |
| HENRY LEE RUDOLPH, | : | COURT PROCEEDINGS |
| Defendant. | : | No CHARGES ? |

\* \* \*

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Salt Lake City, Utah

November 17, 1995

\* \* \*

BRAD J. YOUNG
OFFICIAL COURT REPORTER

```
1                    P R O C E E D I N G S
2          THE COURT:  State of Utah vs. Henry Lee Rudolph,
3   941901206.  Counsel will state an appearance.
4          MS. BYRNE:  Barbara Byrne represents the State.
5          MS. ROGERS:  Kristine Rogers represents Mr. Rudolph.
6          THE COURT:  Is your client in custody?
7          MS. ROGERS:  Yes, he is, your Honor.
8          THE COURT:  Boy, this case has really been around.
9   It is a 1991 --
10         MS. ROGERS:  It went to the Supreme Court and was
11  reversed on appeal.
12         THE COURT:  How did it end up in my court?
13         MS. ROGERS:  It originally went to Judge Hanson, who
14  had heard the trial.  Judge Hanson recused himself.  It came to
15  your Honor's court for some reason.  We had noticed that you
16  had recused yourself.  It went to Judge Peuler.  And now we are
17  back before you.
18         THE COURT:  I never recused myself on the case. 2-5-96
19         MS. ROGERS:  I think it was an error.
20         THE COURT:  At least we are back in court now, ready
21  to proceed.  Tell the Court what you would like to do.
22         MS. BYRNE:  Your Honor, before the Court proceeds
23  further, having observed Mr. Rudolph's demeanor at our last
24  appearance before Judge Peuler, which was on November 6, and
25  having read certain communications sent by Mr. Rudolph to
```

FAX NO. 6315320330

1    members of his family, as an officer of the court, I must

2    communicate to the Court that I have concerns about his

3    competency to proceed from this time.

4              THE COURT:  Are those concerns shared by defense

5    counsel?

6              MS. ROGERS:  They are, your Honor. — IN CONCERT

7              THE COURT:  Has that issue ever been addressed since

8    the time the defendant came into the system on this particular

9    case?

10             MS. BYRNE:  Not that I am aware of, your Honor.

11             MS. ROGERS:  Not to my knowledge.

12             THE COURT:  What would you like the Court to do?

13             MS. BYRNE:  Well, we would like the Court, on its own

14   motion, or on the agreement of counsel, pursuant to 77-15-3, to

15   order the Department of Social Services to make some

16   determination as to Mr. Rudolph's competency before we proceed

17   further.

18             THE COURT:  Do you so move?

19             MS. ROGERS:  Yes, your Honor.

20             THE COURT:  Is the competency evaluation conducted at

21   the Utah State Hospital?

22             MS. BYRNE:  It can be, your Honor, and I think that's

23   probably the best place to pursue it.

24             THE COURT:  Do both parties stipulate?

25             MS. ROGERS:  Yes.

3

1          THE COURT:  Both counsel?  That's the order of the

2     Court.  Based on the representations of both counsel regarding

3     the competency of the defendant to proceed, the defendant is

4     referred to the Utah State Hospital for an evaluation on the

5     question of legal competency to proceed in his own defense.

ERROR

6          THE DEFENDANT:  May I speak, your Honor?

7          THE COURT:  Yes, you may.

8          THE DEFENDANT:  Your Honor, I have had a motion for

9     self representation in since October 6, and there are several

10    motions that have already been introduced into court.  I am

11    competent to try this case.  I want to self represent myself.

12    Now, the problem is that my standby counsel has known she was

13    going to be in a position of standby counsel since the first

14    time that I saw her.  And there are several motions in the

15    court, a motion for self representation, a motion for recusal

16    of Miss Sandra Peuler --

17         THE COURT:  She is out.

18         THE DEFENDANT:  I know.  They are talking about my

19    demeanor in the courtroom at that time.  My demeanor was such

20    because I was subsequently bound over for trial, and that was found

21    completely not guilty of, and the other one contained a defective

22    information besides, Legally, since she adjudicated the first

23    proceeding, the preliminary, it was impossible, legally, for

24    her to address the trial, also, without the appearance of

25    impropriety or lack of impartiality.  What is occurring today



1   is my counsel wants to proceed and try this case, in spite of

2   my adamant opposition to her representing me in this case.

3   Before we go to some type of mental hospital or something, I

4   think it is encumbent upon me to address that issue now, and

5   tell you I am totally competent.  I won a not guilty verdict in

6   the first trial.  And, based on that, I don't know that this is

7   adequately addressed at this point in time.  And this woman

8   doesn't speak for me.  She has been fired for quite some time

9   now.  I think, if you will look and address the four motions I

10  have in --

11          THE COURT:  Just a moment.  What we will do, if you

12  do not believe that you are incompetent to proceed, and you

13  want to pursue your representation pro se --

14          THE DEFENDANT:  I want to proceed pro se.

15          THE COURT:  Then what we will do is set a brief

16  hearing on a date other than the Court's law and motion

17  calendar, where we can make a record, and we can have everyone

18  heard that wants to be heard, and if it is your adamant

19  position, and it is persuasive to the Court, that there is not

20  a question of incompetency, and you want to proceed on your

21  own, the Court is certainly not going to require you to have

22  counsel.

23          THE DEFENDANT:  Yes, your Honor.  With respect to

24  that, may I address, real briefly, it is not going to take me

25  but two minutes.  I need to make get an adequate record.

5

1        THE COURT:  We are not going to make a record today.

2   We will set a hearing one day next week.  You can have all the

3   time you want.  Let's determine a time when we can bring the

4   matter back on the Court's calendar for a special setting, and

5   we will address all issues you have raised.

6        THE DEFENDANT:  One last question, if I may.  There

7   are supposed to be four motions in the court.  I served four on

8   the distinguished prosecutor at that particular hearing that

9   she is talking about, but there is also a motion to recuse, a

10  motion to dismiss --

11       THE COURT:  Who is the motion for recusal against?

12       THE DEFENDANT:  That's the judge that recused

13  themselves.  It is moot.

14       There is a dismissal based on Utah Code 77-1-7, which

15  is pursuant to my constitutional right to a speedy trial.

16  There is a motion for self representation, and her to act as a

17  standby.

18       THE COURT:  We are going to address that one.

19       THE DEFENDANT:  There is also a motion for the

20  jurisdictional challenge questioning the constitutionality of

21  76-6-203, and additional motion for double jeopardy and

22  collateral estoppel.

23       THE COURT:  We will talk about all of them.

24       THE DEFENDANT:  I have four motions right here.

25  Until this counsel has ultimately withdrawn and is not my



1   counsel, as standby, she is supposed to make copies for me.   I

2   sent a letter to John Hill, the director of ~~Legal Aid~~, *Public Defender*

3   recently, suggesting that to him.   I have five additional

4   motions right here that I would like for her to copy, if she

5   would.

6             THE COURT:   Let me ask you a question.   Is it your

7   motion to this Court that you represent yourself in this trial?

8             THE DEFENDANT:   I am going to represent myself with

9   the assistance of standby, which I am entitled to.

10            THE COURT:   Why should we give you standby counsel?

11            THE DEFENDANT:   I need somebody to subpoena.   I need

12  somebody to copy.   I need case law.

13            THE COURT:   Not in my court.   You are either going to

14  paddle your own boat, or you are going to have legal counsel

15  that's paid for, competent, skilled, experienced, very capable

16  legal counsel, whether you believe that to be the case, or not.

17  I have seen the public defender system work.

18            THE DEFENDANT:   May I say --

19            THE COURT:   No, you may not.   I have heard all I am

20  going to hear from you this morning.

21            THE DEFENDANT:   30 seconds?

22            THE COURT:   Go ahead.

23            THE DEFENDANT:   If you are going to compel me to keep

24  this counsel, why can't we set a trial date, and let's go to

25  trial?   She wants to impose her will and be counsel, I will



1    allow her to do that.  If it comes up inefficient counsel, for

2    appellate issues, I will appeal it.  If you are going to compel

3    me to keep her, I will keep her, but I want her to act like a

4    lawyer.

5              THE COURT:  I am not going to compel you to keep her.

6    If we have a hearing, and the Court is convinced you are making

7    the decision rationally to be your own lawyer, you will be your

8    own lawyer.  I am not going to have a platoon of legal

9    defenders sit around in this courtroom and advise you on this

10   case.  That's not going to happen in my courtroom.  You will do

11   it yourself, or you are going to have very competent counsel do

12   it for you.  You are not going to have your cake and nibble on

13   it for an entire trial.

14             THE DEFENDANT:  With all due respect, I think that's

15   contrary to the law.  Art 1 §12  in person or by and through counsel

16             THE COURT:  That's the position --

17             THE DEFENDANT:  I wanted to get it on the record.

18             THE COURT:  We will make a very good record.  Let's

19   set a hearing, and at that time you come prepared to present

20   whether you want to represent yourself.  I am not going to

21   order the public defender to sit behind you and be phantom

22   counsel.

23             THE DEFENDANT:  In order to expedite this thing, I

24   would like to have her represent me, if that's what it takes,

25   so we can avoid all these tangential and excessive collateral

1   hearings.  If that's what it takes, then I will accept her.

2   But I want to set a trial date and get the trial as soon as we

3   can, so I can be exonerated.                    *demand rule*

4          THE COURT:  Let me ask you this.  I don't know if it

5   is as legal as the paper it would be written on.  Are you

6   willing to stipulate that competency is not an issue, and it

7   never will be an issue, either during the trial or on appeal in

8   this case?

9          THE DEFENDANT:  Well, inefficient counsel is ···

10          THE COURT:  I am not talking about counsel.  I am

11   talking about your competency to proceed.  Both counsel have

12   said they question your ability to effectively assist in your

13   defense.  If you are willing to stipulate to this Court that

14   you believe yourself to be very capable of either assisting

15   counsel in your defense or taking this on your own, and that

16   you will not raise that question, either during the trial or

17   during any appellate process if you are convicted, I am ready

18   to set the matter for trial, and we are ready to proceed.

19          THE DEFENDANT:  I am going to have to be dubious with

20   that answer.  You are asking me to waive my constitutional

21   rights.

22          THE COURT:  I am asking you to either tell the Court

23   that you are not incompetent, and proceed, or I am going to

24   send you down to the state hospital, and let somebody determine

25   that.



1    THE DEFENDANT:  Based on what you said, since I am

2    compelled to do that, I will stipulate to that, and allow these

3    people to represent me, but I will raise inefficient counsel,

4    if that does, indeed, occur, if it should go to an appellate

5    level again. (if additional appellate review is necessary is what I actually said).

6    THE COURT:  The defendant is committed to the Utah

7    State Hospital for the -- for the evaluation on competency to

8    cooperate with counsel

9    THE DEFENDANT:  How long is that going to last?

10   THE COURT:  I suspect about two months.  Let's set it

11   for a hearing again on further matters in February.  Put it

12   back on the Court's Friday law and motion calendar in February.

13   February 9, 1996, 10:30 a.m., this court.

14   THE DEFENDANT:  Your Honor, what about me having the

15   hearing in front of you to go pro se?  Why is it -- why is it

16   that I am compelled to go to the state hospital, if I keep

17   these people as counsel, whereas as you said originally, I could

18   have a hearing to represent myself, you are asking me to waive

19   my Constitutional rights now, or be committed to the state hospital.

20   You put me between a rock and a hard spot.  I think that's

21   totally unconstitutional, with all due respect to your

22   distinguished Honor.

23   THE COURT:  I appreciate your concerns on the matter,

24   but the Court believes both counsel have made a very

25   accurate -- raised a very accurate concern.



10

1          THE DEFENDANT:  Are they psychiatrists or lawyers?

2          THE COURT:   We will find out from the psychiatrists.

3          THE DEFENDANT:  Thank you, your Honor.

4          (This proceeding was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

11



COPY

*29*

IN THE THIRD JUDICIAL DISTRICT COURT OF SALT LAKE COUNTY

STATE OF UTAH

\* \* \*

| | |
|---|---|
| STATE OF UTAH, | : |
| | : |
| Plaintiff, | : Case No. 941901206FS |
| | : |
| -vs- | : Honorable Pat B. Brian |
| | : |
| HENRY LEE RUDOLPH, | : MOTION HEARING |
| | : |
| Defendant. | : |
| | : |

\* \* \*

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Salt Lake City, Utah

January 19, 1996

\* \* \*

BRAD J. YOUNG
OFFICIAL COURT REPORTER

1  to have.  And I am done now.  But this is something from the

2  state hospital that will verify the fact that I was there on

3  November 29, 1995, which was actually maybe a week in advance

4  of the actual order for me to be sent to this particular

5  location.  And the Court can copy this one.

6          THE COURT:  Do you want that marked as Defendant's

7  next in order?

8          MR. RUDOLPH:  Sure, your Honor.  I just want to make

9  it a part of the file.

10          THE COURT:  That is marked as Defendant's Exhibit E.

11          MR. COPE:  What was the proffer for that document?

12          THE COURT:  He simply wanted it marked.

13          MR. RUDOLPH:  That I was sent to the state hospital

14  prior to an actual order being written to transport me to the

15  state hospital.

16          MR. COPE:  In 1995?

17          MR. RUDOLPH:  Yes.

18          THE COURT:  That dealt with the competency hearing

19  that he has objected, his attorney and the DA agreed to have

20  done.

21          MR. RUDOLPH:  It wasn't my attorney, your Honor.  I

22  am sorry.

23          THE COURT:  Anyway --

24          MR. RUDOLPH:  The person that was imposed upon me and

25  that made an appearance.

                                                            19

```
   02 96 FILED: (ST'S)     IAL BRIEF RE: ADMISSIBIL     OF EVIDENCE OF     BHA
   02 96          VICTIM'S PRIOR SEXUAL CONDUCT                            BHA
```

```
           Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=Page Selection    PF3=Judge PF4=Prev PF5=Next          PF16=Exit

Alt-Z FOR HELP° VT100      ° FDX ° 19200 N81 ° LOG CLOSED ° PRINT OFF ° ON-LINE

A0504 Docket                                    Page 0032 of 0051
Name:  RUDOLPH, HENRY LEE          DOB:   04/01/53      Case: 941901206 FS

     AGG BURG        GJ      AGG SEX ASLT     NJ     VIOL PROT ORDER  GJ


  02 02 96 FILED: PLF'S PROPOSED VOIR DIRE                          BHA
  02 02 96 FILED: PLF'S REQUESTED JURY INSTRUCTIONS                 BHA
  02 02 96 FILED: (ST'S) TRIAL BRIEF RE: ADMISSIBILITY OF FLIGHT EVIDENCE  BHA
  02 05 96 TRJ      scheduled for  2/ 6/96 at  9:00 A in room G with PBB   BHA
  02 05 96 Trial:                  JUDGE: PAT B BRIAN               TVA
  02 05 96    Deft Present and pro se                               TVA
  02 05 96    ATD:  Deft pro se          ATP: BERNARDS-GOODMAN, KATHER TVA
  02 05 96 FILED: MINUTE ENTRY: JURY TRIAL (1ST DAY)-JURY EMPANELED-   TVA
  02 05 96      WITNESS TESTIFIES (NOREEN OATS)-DEF MOVES FOR MISTRIAL &  TVA
  02 05 96      FOR RECUSAL-BOTH MOTNS GRANTED-CASE TO BE REASSIGNED  TVA
  02 05 96 Trial:                  JUDGE: PAT B BRIAN               BHA


           Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=Page Selection    PF3=Judge PF4=Prev PF5=Next          PF16=Exit

Alt-Z FOR HELP° VT100      ° FDX ° 19200 N81 ° LOG CLOSED ° PRINT OFF ° ON-LINE

BA0504 Docket                                   Page 0033 of 0051
Name:  RUDOLPH, HENRY LEE          DOB:   04/01/53      Case: 941901206 FS

     AGG BURG        GJ      AGG SEX ASLT     NJ     VIOL PROT ORDER  GJ


  02 05 96    Deft Present and pro se                              BHA
  02 05 96    ATD:  Deft pro se          ATP: BERNARDS-GOODMAN, KATHER BHA
  02 05 96 FILED: JURY LIST                                        BHA
M 02 05 96 FILED: EXHIBIT LISTS (PLF'S AND DEF'S)                  BHA
  02 07 96 HRG      scheduled for  2/ 9/96 at 10:31 A in room G with PBB  BHA
  02 09 96 Hearing:                JUDGE: PAT B BRIAN              BHA
  02 09 96    Deft not present.                                   BHA
  02 09 96    ATD: STAM, KAREN S.        ATP: BERNARDS-GOODMAN, KATHER BHA
  02 09 96    HRG      scheduled for 02/20/96 at 0830 A in room G with PBB BHA
  02 09 96 FILED: MINUTE ENTRY: DEF TO BE BROUGHT FROM JAIL FOR SETTING OF BHA
  02 09 96        TRIAL DATE ON 2/20/96 AT 8:30 AM                BHA



           Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=P
```

Alt-Z FOR HELP· VT100      · FDX · 19200 N81 · LOG CLOSED · PRINT OFF · ON-LINE

A0504 Docket                                     Page 0033 of 0051
Name:  RUDOLPH, HENRY LEE          DOB:   04/01/53    Case: 941901206 FS

     AGG BURG           GJ        AGG SEX ASLT     NJ      VIOL PROT ORDER  GJ

                                          *duplicate*
   02 05 96   Deft Present and pro se                                      BHA
   02 05 96   ATD:  Deft pro se         ATP: BERNARDS-GOODMAN, KATHER BHA
   02 05 96   FILED: JURY LIST                                             BHA
 M 02 05 96   FILED: EXHIBIT LISTS (PLF'S AND DEF'S)                       BHA
   02 07 96   HRG      scheduled for  2/ 9/96 at 10:31 A in room G with PBB BHA
   02 09 96   Hearing:                 JUDGE: PAT B BRIAN                   BHA
   02 09 96   Deft not present                                             BHA
   02 09 96   ATD: STAM, KAREN S.       ATP: BERNARDS-GOODMAN, KATHER BHA
   02 09 96   HRG       scheduled for 02/20/96 at 0830 A in room G with PBB BHA
   02 09 96   FILED: MINUTE ENTRY: DEF TO BE BROUGHT FROM JAIL FOR SETTING OF BHA
   02 09 96          TRIAL DATE ON 2/20/96 AT 8:30 AM                      BHA

                *appearance of counsel no affidavit of impecuniosity* ◄

             Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
    PF1=Page Selection   PF3=Judge PF4=Prev PF5=Next        PF16=Exit

Alt-Z FOR HELP· VT100      · FDX · 19200 N81 · LOG CLOSED · PRINT OFF · ON-LINE

A0504 Docket                                     Page 0034 of 0051
Name:  RUDOLPH, HENRY LEE          DOB:   04/01/53    Case: 941901206 FS

     AGG BURG           GJ        AGG SEX ASLT     NJ      VIOL PROT ORDER  GJ

►I 02 12 96   FILED: APPEARANCE OF COUNSEL (KAREN STAM AND KRISTINE ROGERS) TVA
   02 20 96   Hearing:                 JUDGE: PAT B BRIAN                   BHA
   02 20 96   Deft Present      *diversionary*                             BHA
   02 20 96   ATD: STAM, KAREN S.  *Tactic*   ATP: BERNARDS-GOODMAN, KATHER BHA
   02 20 96   FILED: MINUTE ENTRY: KAREN STAMM APPOINTED COUNSEL FOR DEF-DEF'S BHA
   02 20 96          MOTN FOR BAIL GRANTED UNDER CONDITIONS AS ORDERED-BAIL BHA
   02 20 96          SET AT $15,000-PRE-TRIAL SER TO SUPERVISE IF DEF RELEASED BHA
   02 20 96   MO        scheduled for  4/ 2/96 at  9:00 A in room G with PBB BHA
   02 20 96   TRJ       scheduled for  5/ 6/96 at  9:00 A in room G with PBB BHA
   02 27 96   FILED: ORDER FOR PREPARATION OF TRANSCRIPTS                  BHA
   03 06 96   MO        rescheduled to  4/ 2/96 at 10:30 A in room G with PBB BHA

             Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
    PF1=Page Selection   PF3=Judge PF4=Prev PF5=Next        PF16=Exit

Alt-Z FOR HELP· VT100      · FDX · 19200 N81 · LOG CLOSED · PRINT OFF · ON-LINE

A0504 Docket                                     Page 0035 of 0051
Name:  RUDOLPH, HENRY LEE          DOB:   04/01/53    Case: 941901206 FS

     AGG BURG           GJ        AGG SEX ASLT     NJ      VIOL PROT ORDER  GJ

06-10-37α - 9

**STATE OF UTAH**
**332 STATE CAPITOL**
SALT LAKE CITY, UTAH  84114

November 29, 1995

OFF_____ ____...__

Joan C. Watt
Robert K. Heineman
SALT LAKE LEGAL DEFENDER ASSOCIATION
Attorneys at Law
424 East 500 South, Suite 300
Salt Lake City, UT  84111

Letter from
Henry L. Rudolph

The State of Utah,
     Plaintiff and Appellee,
     v.
Henry Lee Rudolph,
     Defendant and Appellant.

No. 950057
    941901206

     The court has received a letter from Mr. Henry L. Rudolph.  I have enclosed a copy of the letter for your reference.  The court would like a response from counsel it is my belief that a letter would suffice.

     Please forward as soon as possible to the clerk's office attn: Pat Bartholomew.

     Thank you.

Respectfully,

Pat Bartholomew
Chief Deputy Clerk

Enclosure

06-10-372-a9

To: Chief Justice Michael D. Zimmerman

From: Henry L. Rudolph

Date: 11/14/1995

RE: My request that you issue an order to allow me to self-represent. The lower Court recently gave me an ultimatum to keep my Court appointed counsel or be sentenced to a mental hospital to be tested for competency. I think legal competency is a question for the court and this Violates my Constitutional rights and constitutes a form of slavery. The Supreme recently reversed my conviction and I've been self-representing all along. The case number is 941901206 and was numbered at the Supreme Court as 950057. I don't have anywhere else to turn. I am willing to face the consequences if I should not prevail and I'm not mentally incompetent nor legally incompetent. Please help me. The only hint of Justice that I've received throughout this fiasco was at the Supreme Court level and I'm begging you to issue an order to stop this abuse of Process.

Sincerely,

Henry L. Rudolph

I put in over 5 motions and my Legal Defender refused to submit them to the court. 1. Violation of Constitional Right To Speedy Trial. I've been held over 57 days since the sentence was vacated with no charges, arraignment, nor bond. Please help me. In the name of Jesus — I beg you all of this is contrary to the law

*06-10-31a ..9*

# SALT LAKE LEGAL DEFENDER ASSOCIATION

F. John Hill
Director

Board of Trustees

Jimi Mitsunaga
    Chairman

D. Gilbert Athay
Solomon Chacon
Ronald Coleman
Maria S. Farrington
Lionel H. Frankel
Ray Groussman
Lon Hinde
J. Rand Hirschi
John O'Connell
Grant H. Palmer

424 EAST FIFTH SOUTH, SUITE 300
SALT LAKE CITY, UTAH 84111
(801) 532-5444
FAX (801) 532-0330

*Established in 1965*

December 5, 1995

Ms. Pat Bartholomew
Chief Deputy Clerk
Supreme Court of Utah
332 State Capital
Salt Lake City,  Utah   84114

     RE:  State v. Henry Rudolph
         No. 950057
         951901206 FS

Dear Ms. Bartholomew:

In response to your letter of November 29, 1995 concerning Henry Rudolph's correspondence to the Utah Supreme Court please be advised that on November 17, 1995, I, Kristine M. Rogers, co-counsel for Henry Rudolph appeared with him before the Honorable Pat Brian for District Court Arraignment.  At that time, Barbara Byrne, Assistant District Attorney for Salt Lake County, raised the question regarding Mr. Rudolph's competency.  I concurred with Ms. Byrne's concerns.  After allowing Mr. Rudolph to address the court, Judge Brian ordered him to the State Hospital for a competency evaluation.

It is true that Mr. Rudolph has asked to self-represent, however, it is not true that the court gave him an ultimatum to keep court appointed counsel or "be sentenced to a mental hospital[.]"  As you may be aware, a defendant cannot elect to self-represent unless he is competent to do so.  State v. Drobel, 815 P.2d 724 at 733, 734 (Utah App. 1991).

The court has not yet addressed Mr. Rudolph's motion to self-represent and cannot address that motion until the query into his competency is complete.  A hearing before Judge Brian will be scheduled when the reports from the appointed alienists are received.

06-10-372-a 7

The Order for a Competency Evaluation signed by the court is
attached.  If you wish further information, please advise.

Sincerely,

Kristine M Rogers

Kristine M. Rogers
Attorney at Law

KMR/skw
cc:  Karen Stam
     Joan Watt
     Barbara Byrne, Deputy District Attorney
     Henry Rudolph

EXH    10

E. NEAL GUNNARSON
District Attorney for Salt Lake County
BARBARA J. BYRNE, 3920
Deputy District Attorney
231 East 400 South, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 363-7900

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT

## IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | | |
|---|---|---|
| THE STATE OF UTAH, | ) | MEMORANDUM IN OPPOSITION TO |
| Plaintiff, | ) | MOTION FOR DISMISSAL ON DOUBLE |
| | ) | JEOPARDY AND COLLATERAL |
| -vs- | ) | ESTOPPEL GROUNDS |
| | ) | |
| HENRY LEE RUDOLPH, | ) | Case No. 941901206 |
| | ) | |
| Defendant. | ) | Hon. Pat B. Brian |

The State of Utah, by and through its counsel, E. Neal Gunnarson, District Attorney for Salt Lake County, and Barbara J. Byrne, Deputy District Attorney, respectfully submits the following memorandum of points and authorities for the Court's consideration in determining whether to dismiss all charges on grounds of double jeopardy, collateral estoppel or due process.

### INTRODUCTION

The defendant contends that a retrial on his recently vacated convictions would violate his right against double jeopardy.  However, when a court sets aside a guilty verdict for reasons other than insufficiency of the evidence, a defendant may be retried without abridging double jeopardy principles.  Thus, the defendant's argument must fail.  Secondly, the mere inconsistencies in the witnesses' testimony do not amount to perjury requiring dismissal of charges.  Assuming arguendo that these inconsistencies do constitute false testimony, the prosecution and defense counsel successfully dispelled any confusion the testimony may have caused.  There is little

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE JEOPARDY GROUNDS
Case No. 941901206
Page 2

likelihood that this testimony would have affected the judgment of the jury. Thus, the defendant's second argument fails; this Court should not dismiss the charges.

## ANALYSIS

### I. RUDOLPH'S CONVICTION WAS NOT OVERTURNED FOR INSUFFICIENCY OF EVIDENCE. HENCE, DOUBLE JEOPARDY DOES NOT PREVENT RETRIAL OF CHARGES.

It has been held many times that the Double Jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See e.g., North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The second of the these protections pertains to this case. The defendant contends that because he was acquitted of aggravated sexual assault, the State lacks sufficient evidence to prosecute him for aggravated burglary, and thus double jeopardy prevents a retrial.

However, it has long been settled that the Double Jeopardy clause does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside because of some error in the proceedings leading to conviction. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed.2d 300 (1896). Permitting retrial after a conviction also serves the defendant's interests, for "it is at least doubtful that appellate courts would be as zealous as they are now in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978*)*, the Court recognized an exception to the general rule permitting reprosecution. is permitted. *Burks* held

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE
JEOPARDY GROUNDS
Case No. 941901206
Page 3

that when a defendant's conviction is reversed by an appellate court on the sole ground that the
evidence was insufficient to sustain the jury verdict, the Double Jeopardy clause bars a retrial on
the same charge. *Id.* at 18, 98 S.Ct. at 2150; *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187,
57 L.Ed.2d 65 (1978)(the successful appeal of a conviction on any grounds other than insufficient
evidence poses no bar to further prosecution on the same charge).

In this instance, the defendant's conviction was not reversed on grounds of insufficient
evidence. The appellate court reversed and remanded the case for retrial solely because the court
reporter's equipment had failed at trial, and a complete transcript was unavailable. In other
words, the Court could not conduct a sufficient review of the case. Based upon *Burks* and *Scott*,
the State can retry the defendant. The primary purpose of the Double Jeopardy clause was to
protect the integrity of a final judgment; barring retrial because the appellate court could not
examine a conviction would not serve this purpose. A defendant should not be able to avoid a
retrial because of a mechanical defect in courtroom equipment, an error beyond the State's
control. Therefore, the Double Jeopardy clause does not bar retrial of the defendant for charges
of aggravated burglary or of violation of a protective order.

II. COLLATERAL ESTOPPEL DOES NOT PREVENT RETRIAL OF THE CHARGE OF
AGGRAVATED BURGLARY. *Later says it does*

Essentially, the defendant argues that because he was acquitted of aggravated sexual
assault, the State cannot use evidence relating to that charge to prosecute him for aggravated
burglary. Therefore, the doctrine of collateral estoppel prevents retrial of the aggravated burglary
charge. However, this contention is incorrect. Collateral estoppel prevents retrial of a factual
issue resolved on the merits in a previous case. If a statute outlines multiple methods of

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE JEOPARDY GROUNDS
Case No. 941901206
Page 4

committing a crime, the State is not prevented from prosecution simply because the state

prosecutor cannot establish the elements of one method.

In this case, collateral estoppel does not prevent reprosecution of the aggravated burglary

charge. In *Glick v. Holden*, 889 P.2d 1389, a Utah appellate court outlined four elements

necessary to invoke the doctrine of collateral estoppel:

> (1) the issue decided in the prior adjudication is identical with the one presented in the action in question; (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted is a party or is in privity with a party to the prior adjudication, and (4) the issue in the first case was completely, fully and fairly litigated.

*Id.* at 1391; *accord Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d

683, 687 (10th Cir. 1992). In this case, the first element is not satisfied. In this particular action,

whether the defendant committed an aggravated sexual assault is at issue. Therefore, the previous

issue of aggravated sexual assault is not identical with any issue presented in the current case.

Collateral estoppel does not apply.

Defendant would contend that because he was acquitted of aggravated sexual assault, the

State could not prove that he possessed the intent to commit a felony, i.e. aggravated sexual

assault. However, the aggravated burglary statute does not limit the State in that manner. As the

defendant aptly pointed out from the pretrial motion hearing, "there are a number of elements,

ways to commit an aggravated burglary. Committing a sexual assault in the course of the

burglary is simply one of them." Defendant's Motion for Dismissal pursuant to Double Jeopardy,

p. 1. The statute outlining aggravated burglary states that a person commits aggravated burglary

by causing bodily injury to a non-participant, or uses or threatens to use a dangerous weapon

against a non-participant, or possesses any explosive or dangerous weapon while attempting,

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE
JEOPARDY GROUNDS
Case No. 941901206
Page 5

committing, or fleeing from a burglary.  Utah Code Ann. § 76-6-203 (1995).  A person commits

burglary by entering or remaining unlawfully in a building with intent to commit a felony or theft

or commit an assault on any person.  Utah Code Ann. § 76-6-202 (1)(1995). *Not the includiling language asserd.*

While it is true that collateral estoppel prevents the State from relitigating the charge of

aggravated sexual assault, *see Ashe v. Swenson*, 397 U.S. 436, 443-46, 90 S.Ct. 1189, 1194-95,

25 L.Ed.2d 469 (1970), if the sexual assault is not an essential element of aggravated burglary,

then collateral estoppel does not bar a subsequent prosecution.  *See State v. Byrns*, 1995 WL

411209, p. 2-3 (Utah Ct. App. 1995)(copy attached).  Therefore, if the State can establish the

necessary elements to prove another way of committing aggravated burglary without relitigating

the aggravated sexual assault issue, then collateral estoppel does not bar reprosecution of the

charge.  Nothing prevents the State from retrying the other charges, and this Court should deny

the defendant's motion to dismiss.

> III. ANY INACCURACIES IN DETECTIVE HUGGARD'S TESTIMONY DO NOT AMOUNT TO
> "FALSE TESTIMONY."  FURTHERMORE, COUNSEL SUBSEQUENTLY CORRECTED THE
> INACCURACIES.

During Detective Huggard's testimony at the first trial, the defendant pointed out an

inconsistency between Huggard's written report and his testimony.  This inconsistency about one *lets more @ trl #3*

minor detail does not amount to false testimony requiring dismissal.  It is well-settled that a

criminal conviction procured by the knowing use of false testimony is fundamentally unfair and

violative of the due process clause of the Fourteenth Amendment and Article 1, § 7 of the Utah

State Constitution.  *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217

(1959); *Walker v. State*, 624 P.2d 687, 690 (1981).  The conviction must be vacated if there is

"any reasonable likelihood that the false testimony could have affected the judgment of the jury."

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE
JEOPARDY GROUNDS
Case No. 941901206
Page 6

*Walker*, 624 P.2d at 690. The same result occurs when the State allows false evidence to go
uncorrected when it appears, even if the testimony is unsolicited. *Id.*

However, the Utah Supreme Court has stated that mere inconsistencies in a prosecution
witness's testimony do not amount to perjury. In *State v. Hewitt*, 689 P.2d 22 (Utah 1984), the
Court ruled that to constitute perjury, "there must be some palpable contradiction or untruth."
*Id.* at 25. In *Hewitt*, the defendants pointed out three inconsistencies between a police detective's
testimony at preliminary hearing and at trial: (1) the distance the detective parked from the house
on which he conducted a surveillance; (2) the strength of the binoculars he used; and (3) that the
defendant carried a bag that appeared to carry something in the bottom. *Id.* at 24. The Court
concluded that those discrepancies did not amount to a palpable contradiction or untruth. *Id.* at
25. Likewise, the inconsistency in Detective Huggard's testimony does not rise to the standard of
'palpable contradiction or untruth.' He erred in his report about where the suspected weapon was
located and taken into evidence. There was no confusion about whether the discovered knife was
the weapon used in the incident, merely the spot where it was located.

Furthermore, a conviction need not be vacated if "any reasonable likelihood that the false
testimony could have affected the judgment of the jury." Even assuming arguendo that this mere
discrepancy amounts to false testimony, the defendant had Detective Huggard's report and had
ample opportunity to cross-examine him on the inconsistency. He was not in any way prejudiced
since he recognized the discrepancy and cross-examined Detective Huggard concerning the
discrepancy. There was no reasonable likelihood that this detail could have prejudicially affected
the jury's judgment.

Finally, it is firmly established that the weight and credibility to be given the testimony of
any witness is a question for the jury. *Hewitt*, 689 P.2d at 25. The defendant cross-examined the

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE JEOPARDY GROUNDS
Case No. 941901206
Page 7

*Bo told him to say he made a mistake.*

witness regarding the inconsistency between his report and his testimony. Detective Huggard admitted at trial that the report was inaccurate. Moreover, two other witnesses corroborated Detective Huggard's testimony at trial. Given these facts, there is no reasonable likelihood that this inaccuracy would have affected the judgment of the jury. Therefore, the conviction does not violate the due process clause and this Court should not overturn the conviction.

## CONCLUSION

Because the Court remanded the case on grounds other than for sufficiency of evidence, double jeopardy principles does not prevent the State from reprosecuting this case. Otherwise, the defendant would benefit from a mechanical error, one which was not committed by the prosecution. Further, collateral estoppel does not prevent reprosecution of this case, because the charge of aggravated sexual assault is not an essential element of the offenses to be retried. Finally, the State did not present any 'false testimony' at trial, requiring dismissal of the charges. At most, Detective Huggard's testimony contained only minor discrepancies, which did not prejudice the defendant. The defendant knew of the differences at trial and cross-examined the witness on that point. Thus, the jury's judgment was not adversely affected by the discrepancy. There was no due process violation. In light of the foregoing points and authorities, the State respectfully requests this Court to deny the defendant's motion to dismiss the charges.

DATED this 17 day of January, 1996.

E. NEAL GUNNARSON
District Attorney for Salt Lake County

_____
Barbara J. Byrne
Deputy District Attorney

MEMORANDUM IN OPPOSITION TO MOTION FOR DISMISSAL ON DOUBLE JEOPARDY GROUNDS
Case No. 941901206
Page 8

## CERTIFICATE OF DELIVERY

I hereby certify that a true and correct copy of the foregoing Memorandum In Opposition To Motion For Dismissal On Double Jeopardy Grounds was delivered this ____ day of January, 1996 to Henry Lee Rudolph Acting Pro Se Salt Lake County Jail.

_____

*Exhibit 7 N*

E. NEAL GUNNARSON
District Attorney for Salt Lake County
KATHERINE BERNARDS-GOODMAN, 5446
Deputy District Attorney
231 East 400 South, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 363-7900

---

### IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT

### IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

---

| | |
|---|---|
| THE STATE OF UTAH, | ) |
| Plaintiff, | )    RESPONSE TO MOTION TO DISMISS COUNT I |
| -vs- | ) |
| HENRY LEE RUDOLPH, | )    Case No. 941901206FS |
| Defendant. | )    Hon. PAT B. BRIAN |

---

The State, by and through its attorney, Katherine Bernards-Goodman, Deputy District Attorney, hereby responds to Defendant's Motion to Dismiss Count I Aggravated Burglary.

In the information dated August 4, 1994 the defendant was charged with an aggravated burglary, under Utah Code Annotated Title 76, Chapter 6, Section 203. The intent alleged was intent to commit a sexual assault. The Defendant was charged with Aggravated Sexual Assault and Violation of a Protective Order as well. Mr. Rudolph was found not guilty on December 1, 1994 of the aggravated sexual assault and it has been conceded that this charge cannot be relitigated.

However, the Defendant was found guilty of Aggravated Burglary and Violation of a Protective Order. While the jury found that the defendant did not commit an aggravated sexual assault, this does not preclude them, nor is it inconsistent for them, to find the defendant had the

RESPONSE TO MOTION TO DISMISS COUNT I
Case No. 941901206FS
Page 2

intent to commit a sexual assault and that he entered or remained in the dwelling with said intent.

The jury has not rejected a block of evidence by finding the defendant not guilty of the *jury?*

aggravated sexual assault yet guilty of the intent to commit a sexual assault or assault. *Ex post facto*

Mr. Rudloph's conviction on Count I was vacated and remanded for retrial. (See Order

from the Supreme Court of The State of Utah, dated September 21, 1995). Apparently the Utah

Supreme Court did not find a double jeopardy problem with acquital of the aggravated sexual

assault and retrial of count I, the aggravated burglary.

By revisiting the evidence of the sexual assault, we are not subjecting the defendant to *← 9/30/76*

double jeopardy. The charge of aggravated sexual assault will not be brought before the jury and

the defendant is not at risk of being found guilty of that charge.

The Utah Rules of Criminal Procedure provide that "[t]he court may permit an indictment

or information to be amended at any time before verdict if no additional or different offense is

charged. . .". Utah Rules of Criminal Procedure, Rule 4(d). The Defendant was previously

charged with an Aggravated Burglary and remains charged with the same. The State moved to

amend the information prior to the second trial to exclude the aggravated sexual assault charge

and to clarify the applicable intents on the aggravated burglary charge. The necessary intents are *after 2 trials*

made clear in Utah Code Annotated, under the cite provided in the information. *incorrect cite defect in chrgng instrument*

Jury instruction number 18, submitted at the original trial listed the elements necessary

for a conviction on the Aggravated Burglary charge. The list included the element "[t]hat the

defendant entered or remained with the intent to commit the crimes of rape and/or assault on any

person." The government is not trying to reformulate it's case in light of what it learned during *←*

the first trial. It is still the state's contention that the defendant had the intent to commit a sexual

assault or an assault. These elements were given to defendant in jury instructions prior to the

first trial and the same elements will be submitted for the upcoming trial. *these were not*

RESPONSE TO MOTION TO DISMISS COUNT I
Case No. 941901206FS
Page 3


DATED this 27th day of March, 1996.

RESPECTFULLY SUBMITTED,

E. NEAL GUNNARSON
District Attorney

KATHERINE BERNARDS-GOODMAN
Deputy District Attorney

Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=Page Selection   PF3=Judge PF4=Prev PF5=Next         PF16=Exit

Alt-Z FOR HELP° VT100      ° FDX ° 19200 N81 ° LOG CLOSED ° PRINT OFF ° ON-LINE

A0504 Docket                                    Page 0040 of 0051
Name:  RUDOLPH, HENRY LEE        DOB:  04/01/53    Case: 941901206 FS

    AGG BURG        GJ       AGG SEX ASLT     NJ       VIOL PROT ORDER  GJ

    04 22 96 FILED: ORDER TO DELIVER RECORDS                          BHA
  I 04 23 96 FILED: MEMO OF LAW OPPOSING STATE'S INTRODUCTION OF EVIDENCE  TVA
  I 04 23 96        REGARDING SEXUAL ASSAULT                          TVA
  I 04 23 96 FILED: SUBPOENA DUCES TECUM SERVED TO FHP                TVA
    04 30 96 FILED: MINUTE ENTRY: COURT'S RULING RE: STATE'S USE OF SEXUAL  BHA
    04 30 96        ASSAUL EVIDENCE TO PROVE ELEMENTS OF AGGR BURGLARY CHG-  BHA
    04 30 96        STATE IS ALLOWED TO PRESENT EVIDENCE OF SEXUAL ASSAULT  BHA
    04 30 96        (OF WHICH DEF WAS PREVIOUSLY ACQUITTED) TO PROVE AGGR  BHA
    04 30 96        BURGLARY CHARGE-TRIAL ON 5/6/96 IS STRICKEN PER STIP OF  BHA
    04 30 96        COUNSEL - ALSO STRIKE MOTN HRNG ON 5/3/96 -DA TO PREPARE  BHA
    04 30 96        FINDINGS AND ORDER AND SUBMIT TO OPP COUNSEL FOR APPROVAL  BHA


        Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=Page Selection   PF3=Judge PF4=Prev PF5=Next         PF16=Exit

Alt-Z FOR HELP° VT100      ° FDX ° 19200 N81 ° LOG CLOSED ° PRINT OFF ° ON-LINE

A0504 Docket                                    Page 0041 of 0051
Name:  RUDOLPH, HENRY LEE        DOB:  04/01/53    Case: 941901206 FS

    AGG BURG        GJ       AGG SEX ASLT     NJ       VIOL PROT ORDER  GJ

    04 30 96        AS TO FORM AND SUBMIT TO COURT FOR SIGNATURE-ATD TO  BHA
    04 30 96        SUBMIT WRITTEN CONSENT BY DEF TO CONTINUANCE OF TRIAL  BHA
    04 30 96 Hearing (TELEPHONE CONFERENCE):   JUDGE: PAT B BRIAN      BHA
    04 30 96    Deft not present                                      BHA
    04 30 96    ATD: ROGERS, KRISTINE        ATP: BERNARDS-GOODMAN, KATHER  BHA
    04 30 96 MO      on  5/ 3/96 was cancelled                        BHA
    04 30 96 TRJ     on  5/ 6/96 was cancelled                        BHA
    05 07 96 HRG     scheduled for  5/10/96 at 10:31 A in room G with PBB  BHA
    05 08 96 HRG     rescheduled to  5/10/96 at 10:30 A in room G with PBB  TVA
    05 08 96 FILED: NOTICE OF HEARING SETTING BAIL                    TVA
    05 08 96 FILED: NOTICE OF HEARING SET FOR 5/10/96                 TVA


        Assigned Judge: PBB   Disposition Judge: PBB
Note:   DEFT IN JAIL **FILE LOCATED ON CRIMINAL HOLD SHELF***
   PF1=Page Selection   PF3=Judge PF4=Prev PF5=Next         PF16=Exit

Alt-Z FOR HELP° VT100      ° FDX ° 19200 N81 ° LOG CLOSED ° PRINT OFF ° ON-LINE

A0504 Docket                                    Page 0042 of 0051
Name:  RUDOLPH, HENRY LEE        DOB:  04/01/53    Case: 941901206 FS

*Henry Rudolph USP# 23534*
*Original Hearing*
*September 2001*



Community College in 1988 to 1989, and Weber State from 1989 to 1991 earning his Bachelor of Science. The last college Rudolph attended was the University of Utah (Law School) from 1991 to 1994. Mr. Rudolph indicated the prison did not offer any educational courses that he would benefit him. Additionally, he is appealing his case through the court system, Pro SE and utilized his time to research relevant law pertaining to his case.

## MENTAL HEALTH:

Summary:     Inmate Rudolph is enrolled with Milo Garcia's class.

## SEX OFFENDER:

Summary:     Inmate is not required to enroll in sex offender therapy.

## HOUSING UNIT REPORT:

"Inmate RUDOLPH, is hot and cold. There are times when he can be a management problem and times when he's no problem at all. He's a very smart individual that is willing to help other inmates with their problems. He is reliable with his section job and exercises a lot in the section." (O-squad day)

"RUDOLPH, Henry Lee #80582 has lived in CEDAR since November 12, 1999. Mr. RUDOLPH is a very quiet person. He seems to get along with other inmates as well as staff. He has never caused any one of the officers on O Night Squad any grief." (O-squad night)

"Rudolph, Henry #80582 is suspected of doing other inmates legal work. Holds a section job (ice/laundry-man). He is currently a K level." (X-squad day)

"Inmate Rudolph, Henry Lee is currently a K level. He has a section job (laundry worker. He does a good job and has become a more manageable inmate since receiving a section job. He gets along with most inmates and staff." (X-squad night)

## FAMILY AND COMMUNITY SUPPORT:

Inmate Rudolph states his family owns several parcels of property and he will always have a place to live.

## REPORT SUMMARY:

Inmate Rudolph was charged with Count II, Aggravated Sexual Assault, a 1st Degree Felony; Count III, Violation of Spouse Abuse Protection Order, a Class A Misdemeanor; and I, Aggravated Burglary, a 1st Degree Felony. Inmate Rudolph was found guilty of Count I, Aggravated Burglary, a 1st Degree Felony; and Count III, Violation of a Spouse Abuse Protection Order, a Class A Misdemeanor, by a jury of his peers. The jury found the defendant not guilty of Count II, Aggravated Sexual Assault, a 1st Degree Felony.

Court documentation supports that inmate Rudolph has 801 days credit time served. (Document attached to



# BEFORE THE BOARD OF PARDONS OF THE STATE OF UTAH

UTAH STATE OBSCIS NO.    80582

Consideration of the Status of <u>RUDOLPH, Henry Lee</u>          PRISON NO.  __23534__

The above-entitled matter came on for consideration before the Utah State Board of Pardons on the 18th day of September, 2001, for:

### ORIGINAL HEARING

After a review of the submitted information and good cause appearing, the Board makes the following decision and order:

### RESULTS

Parole effective 08/10/2004.  Final decision of the hearing held on 09/11/2001.

1 Abide by Sex Offender Special Conditions Group B.  (ADULT)
2 Have no contact with victim or her family, except per Court-ordered child visitation.

| No | Crime | Sent | Case No. | Judge | Expiration |
|----|-------|------|----------|-------|------------|
| 1 | VIOLATION OF PROTECTIVE | 1 | 941901206 | BRIAN | 07/31/1995 |
| 2 | AGGRAVATED BURGLARY | 5-L | 941901206 | BRIAN | LIFE |

This decision is subject to review and modification by the Board of Pardons at any time until actual release from custody.

By order of the Board of Pardons of the State of Utah, I have this date 18th day of September, 2001, affixed my signature as Chairman for and on behalf of the State of Utah, Board of Pardons.

_____
M. R. Sibbett, Chairman

04/14/04   WED 10:22 FAX 801 576 8249        UT STATE CORR IPO        →→→ BOPP        ☑002



OLENE S. WALKER
*Governor*

GAYLE F. McKEACHNIE
*Lieutenant Governor*

23534
Parole 8/10/04

State of Utah

Department
of
Corrections

MIKE CHABRIES
*Executive Director*

JOE M. BORICH
*Director*
*Adult Probation & Parole*

# INSTITUTIONAL PAROLE OFFICE
## *SPECIAL ATTENTION*

TO:          Board of Pardons and Parole [BOPP]
FROM:        J.C. Holt, IPO Agent
THROUGH:     Ron Swenson, IPO Supervisor    *[signature]* ——— 4/14-04
             Institutional Parole Office
DATE:        04/14/2004
RE:          Rudolph, Henry USP #23534/Offender #80582

Henry Rudolph is scheduled to parole on August 10, 2004. I recently met with Mr. Rudolph to
begin the process of his parole and associated paperwork. He refused to cooperate with me and
would not sign or go over his parole agreement. He states he has no intention of paroling as he is
innocent and his case is in the process of being reversed. He did provide me with legal
documents stating the above process was proceeding through the court system. He then stated he
was going to sue me as well as the Board of Pardons. He later told me he was going to sue
everyone in the Department of Corrections. I am sending this memo for your information and to
make you aware of this situation. He reports he has a court hearing in late April. If the court
proceeding mentioned in this memo does not go through and Mr. Rudolph remains incarcerated,
it is recommended he appear before the Board for a rescission hearing.

If you have any questions or comments, please contact:   J.C. Holt at the Institutional Parole
Office, telephone: 576-8252.

04/14/04

**Utah!**
*Where ideas connect™*

RUDOLPH, HENRY LEE   USP # 2353,         Offender Number 80582   O3  208T                    04/14/2004

# Utah!

*Where ideas connect*

**Olene S. Walker**
Governor
**Michael R. Sibbett**
Chairman
**Donald E. Blanchard**
**Jesse Gallegos**
**Curtis L. Garner**
**Cheryl Hansen**
Members

## BOARD OF PARDONS AND PAROLE

448 E 6400 S, STE 300
MURRAY, UT 84107
Tel  (801) 261-6464
Fax (801) 261-6481
www.bop.utah.gov

## BEFORE THE BOARD OF PARDONS OF THE STATE OF UTAH

Offender #         80582

Consideration of the Status of  Henry Lee Rudolph                              USP #         23534

### HEARING OFFICER RESULTS

After a review of the submitted information and good cause appearing, the Board makes the following decision and order:

| Results | Effective Date |
|---|---|
| 1.  SCHEDULE FOR HEARING | 5/11/2004 |

**Hearing Notes**
1.  Schedule for a Rescission Hearing on 05/11/2004.

| No | Crime | Sent | Case No. | Judge | Expiration |
|---|---|---|---|---|---|
| 1. | VIOL OF PROTECTIVE ORDER | 0-1 | 94-1901206 | HANSON | 7/31/1995 |
| 2 | AGGRAVATED BURGLARY | 5-100 | 94-1901206 | HANSON | 8/15/2094 |

This decision is subject to review and modification by the Board of Pardons at any time until actual release from custody.

By order of the Board of Pardons of the State of Utah, I have this date 14th day of April, 2004, affixed my signature as Chairman for and on behalf of the State of Utah, Board of Pardons.

Michael R. Sibbett, Chairman

06/16/04   WED 15:26 FAX 801 576 8249       UT STATE CORR IPO       →→→ BOPP            Ø002



Page 1 of 2

Olene S. Walker
Governor
Michael R. Sibbett
Chairman



Members
Donald E. Blanchard
Jesse Gallegos
Curtis L. Garner
Cheryl Hansen

# BEFORE THE BOARD OF PARDONS AND PAROLE OF THE STATE OF UTAH
# PAROLE AGREEMENT

**Name** RUDOLPH, HENRY LEE                **Offender #** 80582                **USP #** 23534

I, RUDOLPH, HENRY LEE, agree to be directed and supervised by Agents of the Utah State Department of Corrections and will abide by the following conditions of my parole, effective August, 10, 2004:

1.  **RELEASE:** On the day of my release from the institution of confinement, I will report to my assigned AP&P Officer unless otherwise approved in writing from Adult Probation and Parole.

2.  **ABSCONDING:** I will not abscond from parole supervision. A-Reporting: I will report as directed by the Utah Department of Corrections. B-Residence: I will establish and reside at a residence of record and will not change my residence without first obtaining permission from my AP&P Officer. C-Leaving the State: I will not leave the state of Utah, even briefly, or any other state to which I am released or transferred without prior written permission from my AP&P Officer.

3.  **CONDUCT:** I will obey all state, federal and municipal laws. I will submit DNA identifier as required by law. If arrested, cited or questioned by a peace officer, I will notify my AP&P Officer within 48 hours of the incident.

4.  **HOME VISITS:** I will permit visits to my place of residence by officers of Adult Probation and Parole for the purpose of ensuring compliance with the conditions of my parole. I will not interfere with this requirement; i.e. having vicious dogs, perimeter security doors, refusing to open the door, etc.

5.  **SEARCHES:** I will permit officers of Adult Probation and Parole to search my person, residence, vehicle or any other property under my control without a warrant at any time, day or night, upon reasonable suspicion to ensure compliance with conditions of my parole.

6.  **WEAPONS:** I will not own, possess, have under my control or in my custody any explosives, firearms or dangerous weapons as defined in Utah Code Annotated, Section 76-10-501, as amended.

7.  **EMPLOYMENT:** Unless otherwise authorized by my parole agent, I will seek, obtain and maintain verifiable, lawful, full-time employment (32 hours per week minimum) as approved by my AP&P Officer. I will notify my AP&P Officer of any change in employment within 48 hours.

8.  **ASSOCIATION:** I will not knowingly associate with any person who is involved in criminal activity or who has been convicted of a felony without approval from my AP&P Officer.

9.  **CHEMICAL ANALYSIS:** I will submit to test of my breath, body fluids or hair to ensure compliance with the Parole Agreement.

10. **TRUTHFULNESS:** I will be cooperative, compliant and truthful in all my dealings with Adult Probation and Parole.

11. **FEES:** I will pay supervision fees as determined by the Department of Corrections.

12. **SPECIAL CONDITIONS:**
    1.  NO CONTACT          Have no contact with victim or her family except per court-ordered child visitation.
    2.  COMPLETE SEX OFFENDER B PROGRAM. *This is not a condition that any court has stipulated. Signed under duress because I wont get paroled without*

06/16/04   WED 15:27 FAX 801 576 8249      UT STATE CORR IPO      →→→ BOPP         Ø003

| | | |
|---|---|---|
| a. | THERAPY | Enter into, participate in and successfully complete sex offender therapy as determined by the treating facility, therapists and the Utah Department of Corrections. |
| b. | CURFEW | Enter into and successfully complete established progressive curfews or electronic monitoring where available when required by Adult Probation and Parole. |
| c. | VICTIM CONTACT | Have no direct or indirect contact with the victim(s) or victim's family without prior written approval from Adult Probation and Parole. |
| d. | SEX STIMULUS MATERIA | Not have in my possession or under my control any material that acts as a sexual stimulus for my particular deviancy(s) including, but not limited to: computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc. without prior written approval from Adult Probation and Parole. |
| e. | EXPLOIT MATERIAL | Not have in my possession or under my control any material that describes or depicts human nudity, the exploitation of children, consensual sex acts, non-consensual sex acts, sexual acts involving force or violence including, but not limited to: computer programs, computer links, photographs, drawings, video tapes, audio tapes, magazines, books, literature, writings, etc. without prior written approval from Adult Probation and Parole. |
| f. | B/POLYGRAPH | Submit to random polygraph examinations. |
| g. | EMPLOYMENT | Employment must be approved by Adult Probation and Parole. |
| h. | RESIDENCE | Residence and residence changes must be approved by Adult Probation and Parole. |
| i. | INTERSTATE COMPACT | Execute and adhere to the terms of the Interstate Compact Waiver and Agreement if probation or parole is served outside of the state of Utah. |

I have read, understand and agree to be bound by this agreement. If I violate any of the conditions of this agreement, the Board of Pardons may revoke my parole or the Department of Corrections may take other appropriate action against me.

_____       SIGNED: _____       Offender #: _____

DATE

_____       WITNESSED BY: _____

DATE

AUTHORIZED BY: _____

Chairman: Board of Pardons and Parole

RUDOLPH, HENRY LEE    USP # 23534         Offender Number 80582    O3  111T                    06/18/2004



*Utah!*

*Where ideas connect*

Olene S. Walker
*Governor*
Michael R. Sibbett
*Chairman*
Donald E. Blanchard
Jesse Gallegos
Curtis L. Garner
Cheryl Hansen
*Members*

## BOARD OF PARDONS AND PAROLE

448 E 6400 S, STE 300
MURRAY, UT 84107
Tel (801) 261-6464
Fax (801) 261-6481
www.bop.utah.gov

## BEFORE THE BOARD OF PARDONS OF THE STATE OF UTAH

Offender #      80582

Consideration of the Status of   Henry Lee Rudolph                    USP #      23534

The above-entitled matter came on for consideration before the Utah State Board of Pardons on the 11th day of May, 2004 for:

### RESCISSION HEARING

After a review of the submitted information and good cause appearing, the Board makes the following decision and order:

| Results | | Effective Date |
|---|---|---|
| 1. | DATE RESCINDED | 6/17/2004 |
| 2. | SCHEDULE FOR HEARING | 1/1/2006 |

**Hearing Notes**
1.   Rescind 08/10/2004 parole date.
2.   Schedule for a Rehearing in 01/2006.
3.   The Board of Pardons will only consider a parole upon receipt of a letter signed by Mr. Rudolph and his Federal Defender, Howard Pincus, indicating that he desires a parole and is willing to accept the conditions of parole as previously set.
4.   Final decision of the hearing held on 05/11/2004.

| No | Crime | Sent | Case No. | Judge | Expiration |
|---|---|---|---|---|---|
| 1. | VIOL OF PROTECTIVE ORDER | 0-1 | 94-1901206 | HANSON | 7/31/1995 |
| 2. | AGGRAVATED BURGLARY | 5-100 | 94-1901206 | HANSON | 8/15/2094 |

This decision is subject to review and modification by the Board of Pardons at any time until actual release from custody.

By order of the Board of Pardons of the State of Utah, I have this date 17th day of June, 2004, affixed my signature as Chairman for and on behalf of the State of Utah, Board of Pardons.

Michael R. Sibbett, Chairman



RECEIVED

JAN 24 2011

BOARD OF PARDONS

**STATE OF UTAH**
**ADULT PROBATION AND PAROLE**

PRIVATE
**PAROLE PROGRESS/VIOLATION REPORT**

**TO:** Board of Pardons and Parole

**ATTN: Hearing Officer**

**FROM:** Salt Lake Adult Probation and Parole

**DATE:** 01/18/2011

**PAROLE DATE:** 08/05/2008

**LEGISLATIVE DATE:** 08/15/2094

**REGARDING:** RUDOLPH, Henry Lee

**OFFENDER #:** 80582

**ADDRESS:** 3020 HOMESTEAD
CHEYANNE WY 82007

**EMPLOYMENT:** Laborer
Labor Ready
1414 Logan
Cheyenne WY 82001

**ALLEGATIONS:**
No current allegations.

**SUBJECT:**
On January 18, 2011, I received a Compact Action Request from Wyoming. The request indicated
Rudolph would like a hearing with the BOPP.

**COMMENTS:**
On January 18, 2011, Wyoming indicated Mr. Rudolph has asked his Wyoming Parole Agent to notify the
State of Utah that he would like a hearing. Mr. Rudolph feels that he did not agree to any parole
conditions and they were forced on him. He adds that he signed everything under duress; therefore
everything he has signed is not really a valid contract.

**RECOMMENDATION (IF REQUIRED):**
Adult Probation and Parole respectfully recommends Mr. Rudolph be scheduled for a hearing on the next
available calendar.

AL LOLOHEA, SUPERVISOR                    TYSON PEPPER, PAROLE OFFICER

RUDOLPH, HENRY LEE    USP # 2353?    Tender # 80582    PARCOM/WYOMING

Printed :01/27/20

Page 1 of



Gary R. Herbert
Governor
Clark A. Harms
Chairman

Members
Curtis L. Garner
Jesse Gallegos
Robert S. Yeates
Angela F. Micklos

# BEFORE THE BOARD OF PARDONS AND PAROLE OF THE STATE OF UTAH

Offender # 80582

Consideration of the Status of:  Henry Lee Rudolph

USP # 23534

## SPECIAL ATTENTION REVIEW

After a review of the submitted information and good cause appearing, the Board makes the following decision and order

| Results | Effective Date |
|---|---|
| CONTINUE ON PAROLE | 1/27/2011 |

Hearing Notes:

1. Other:  The Board of Pardons denies Mr. Rudolph's request for a Special Attention Hearing.
2. PAROLE OFFICER:  TYSON PEPPER/REGION III/SLC.

| No | Crime | Sent | Case No. | Judge | Expiration |
|---|---|---|---|---|---|
| 1. | AGGRAVATED BURGLARY | 5-100. | 94-1901208 | HANSON | 8/15/2094 |

This decision is subject to review and modification by the Board of Pardons at any time until actual release from custody.

By order of the Board of Pardons of the State of Utah, I have this date 27th day of January, 2011, affixed my signature as Chairman for and on behalf of the State of Utah, Board of Pardons.

Clark A. Harms, Chairman

---

Jon M. Huntsman, Jr.
Governor
Curtis L. Garner
Chairman

RECEIVED
AUG 0 4 2008
BOARD OF PARDONS

UDOCA

Page 1 of

Members
Jesse Gallegos
Keith N. Hamilton
Cheryl Hansen
Clark A. Harms

# BEFORE THE BOARD OF PARDONS AND PAROLE OF THE STATE OF UTAH
## PAROLE AGREEMENT

Name  RUDOLPH, HENRY LEE          Offender # 80582          USP # 23534

I, RUDOLPH, HENRY LEE, agree to be directed and supervised by Agents of the Utah State Department of Corrections and will abide by the following conditions of my parole, effective August, 05, 2008:

1. RELEASE:  On the day of my release from the institution of confinement, I will immediately report to my assigned AP&P officer unless otherwise approved in writing from Adult Probation and Parole.

2. REPORTING:  I will report as directed by the Utah Department of Corrections.

3. RESIDENCE:  I will establish and reside at a residence of record and will not change my residence without first obtaining permission from my AP&P officer.

4. HOME VISITS:  I will permit visits to my place of residence by officers of Adult Probation and Parole for the purpose of ensuring compliance with the conditions of my parole. I will not interfere with this requirement; i.e. having vicious dogs, having security doors, refusing to open the door, video surveillance, scanner or other radio frequency product, etc. without prior authorization of Adult Probation and Parole.

5. ABSCONDING:  I will not abscond parole, as evidenced by my failure to report AND I cannot be located, after reasonable efforts, at my place of residence and employment.

6. LEAVING STATE:  I will not leave the state of Utah, even briefly, or any other state to which I am released or transferred without prior written permission from my AP&P officer.

7. CURFEW:  I will comply with a 9:00 pm to 6:00 am curfew for up to the first ninety (90) days of my parole.  Exceptions to this curfew may be granted for work, school, therapy or other circumstances, but must be approved in advance by officers from AP&P.

8. CONDUCT:  I will obey all state, federal and municipal laws.  I will notify my AP&P officer within 24 hours of an incident.

9. SEARCHES:  I understand that I am subject to search or seizure of my person, property, place of temporary or permanent residence, vehicle, or personal effects, by officers/agents of AP&P or a law enforcement officer, at any time, with or without a search warrant, and with or without cause, except a law enforcement officer not employed by AP&P may not search my temporary or permanent residence, or effect a seizure pursuant to that search without either prior approval of a parole officer or a warrant for the search.

10. WEAPONS:  I will not own, possess, have under my control, in my custody or on the premises where residing, any explosives, firearms, or dangerous weapons as defined in Utah Code Annotated, Section 76-10-501, as amended.  Nor will I possess or have under my control any non-lethal device intended to harm or incapacitate, without prior authorization from Adult Probation and Parole.

11. FEES:  I will pay supervision fees as determined by the Department of Corrections.